# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THYRONE DESHAWN EVANS,

        Defendant-Appellant.

UNPUBLISHED
September 27, 2016

No. 324460
Wayne Circuit Court
LC No. 13-009779-FC

Before: GADOLA, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317; felon in possession of a firearm (felon-in-possession), MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to concurrent sentences of 40 to 60 years' imprisonment for the second-degree murder conviction and 16 to 20 years' imprisonment for the felon-in-possession conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

First, defendant argues that there was insufficient evidence to support his conviction of second-degree murder. We disagree.

As this Court stated in *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014):

> A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt. [Citations omitted.]

This Court has also stated:

-1-

All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. [B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented. [*People v Bosca*, 310 Mich App 1, 16; 871 NW2d 307 (2015), lv abeyed ___ Mich ___; 872 NW2d 492 (2015) (citations and quotation marks omitted).]

The elements of second-degree murder are:

(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. The term malice has been defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. [*People v Henderson*, 306 Mich App 1, 9-10; 854 NW2d 234 (2014) (citations and quotation marks omitted).]

The evidence indicated that the victim died as a result of a gunshot wound to his chest. Hershel Felder testified that he saw defendant shoot the victim as the victim walked away from defendant's car. Although Felder testified at trial that he did not see a gun, he previously testified that he saw a handgun come out of the window. Defendant also admitted firing a gun. Defendant's intent to kill can be inferred from his use of a deadly weapon. *Id.* at 11. Although several witnesses either saw or heard another shooter, Felder testified that he saw defendant shoot the victim first. Additionally, Maurice Westley, Jamon Hawkins, and Dontanya Battle all heard a single shot before hearing a second set of shots. Battle saw the victim walk up to the driver's side of the red Charger before the shooting. Two types of shell casings were found at the scene, including some from defendant's weapon. The medical examiner could not say what type of bullet hit the victim. However, Westley saw the other shooter go behind the Charger and Hawkins saw the shooter on the passenger's side of the Charger, while Battle saw the victim on the driver's side of the Charger before the shooting. The damage observed on the Charger was on the back and passenger's side. Moreover, Hawkins saw the other shooter aiming downward at defendant's car, and the medical examiner testified that the path of the projectile that entered the victim was slightly upward.

Although Felder was a heroin user, he testified that he did not have heroin in his system on September 30, 2013, the night of the shooting. Also, while Felder gave inconsistent testimony and statements regarding what he saw and his location during the shooting, the jury was free to determine his credibility and the weight of his testimony. See *Bosca*, 310 Mich App at 16. Defendant does not allege any "exceptional circumstances" that would lead this Court to deviate from the general rule that "issues of witness credibility are within the exclusive province of the trier of fact." *Id.* at 13 (citation and quotation marks omitted). Based on Felder's testimony, in addition to the testimony of Westley, Hawkins, and Battle, the jury could find beyond a reasonable doubt that defendant shot the victim with malice, causing his death.

Defendant did not deny firing a weapon, but claimed that he acted in self-defense. "Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (quotation marks omitted). Under MCL 780.972:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

Defendant testified that he fired his weapon after several shots were fired at his vehicle and that he did not aim at anyone. As previously discussed, however, there was ample evidence that defendant fired the first shot at the victim and, thus, that he did not fire his weapon in self-defense. There was also evidence of an earlier confrontation between defendant and the victim about defendant speeding, and that defendant came to Braile Street, the location of the shooting, with a gun. Moreover, defendant fled the scene after the shooting, there was no evidence that he went to the police, and he later lied to the police about the shooting. Accordingly, the jury could find beyond a reasonable doubt that defendant did not fire his weapon in self-defense and, thus, that defendant's act was without justification or excuse.

## II. GREAT WEIGHT OF THE EVIDENCE

Next, defendant argues that he is entitled to a new trial because the jury's verdict is against the great weight of the evidence. We disagree.

In order to preserve a claim that the verdict was against the great weight of the evidence, a defendant must move for a new trial in the trial court. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Defendant did not file a motion for a new trial in the trial court; therefore, this issue is unpreserved. "An appellate court will review a properly preserved great-weight issue by deciding whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id*. However, when the defendant fails to preserve a great-weight issue for appeal, this Court reviews the argument for plain error affecting the defendant's substantial rights. *Id*. "An error affect[s] a defendant's substantial rights if it affected the outcome of the lower court proceedings." *Bosca*, 310 Mich App at 47.

For the reasons previously discussed, there was sufficient evidence to support defendant's second-degree murder conviction and defendant fails to establish plain error affecting his substantial rights. With regard to the felon-in-possession and felony-firearm convictions, defendant has not properly presented his claims because he fails to sufficiently brief the merits. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not

-3-

merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

Nonetheless, defendant fails to establish plain error affecting his substantial rights regarding his felon-in-possession and felony-firearm convictions. The elements of felon in possession of a firearm are (1) the defendant was in possession of a firearm, (2) the defendant had previously been convicted of a specified felony, and (3) less than five years had lapsed since the defendant paid all fines imposed, served all terms of imprisonment, and successfully completed all conditions of probation or parole, and the defendant had not regained eligibility to possess a firearm. *People v Perkins*, 473 Mich 626, 630-631; 703 NW2d 448 (2005); MCL 750.224f(2). The parties stipulated that defendant was convicted of a specified felony and had not regained the right to lawfully possess a firearm, and defendant admitted that he was in possession of a pistol. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). There was evidence that defendant possessed a firearm when he shot and killed the victim, which constituted second-degree murder. There was also evidence that he possessed a firearm while being a felon in possession of a firearm. Thus, there was sufficient evidence to support defendant's felon-in-possession and felony-firearm convictions, and defendant fails to establish plain error affecting his substantial rights.

Defendant argues that the trial court's and the prosecutor's improper treatment of him, as well as the trial court's improper instructions to the jury, contributed to the jury rendering a verdict that was against the great weight of the evidence. As discussed in section III, *infra*, there was no error with regard to the trial court's instructions to the jury. Thus, defendant fails to establish plain error affecting his substantial rights.

With regard to defendant's claim that the trial court repeatedly cut him off, he cites the portion of the trial in which he moved for a mistrial based on the trial court's interruptions of defense counsel in front of the jury and refusal to allow defense counsel to finish cross-examination of Felder. The trial court denied the motion and stated that it had given defense counsel sufficient time for a fair cross-examination, and had given defense counsel more time than the trial court originally said it would give him. Defendant fails to explain how the trial court's ruling was erroneous or affected his substantial rights, and merely claims that the trial court's and the prosecutor's improper treatment of defense counsel may have swayed the jury. He does not identify any specific statements or conduct by the prosecutor that he claims were improper. Therefore, he fails to establish plain error affecting his substantial rights.

## III. JURY INSTRUCTIONS

Defendant also argues that he is entitled to a new trial because the trial court improperly instructed the jury. We disagree.

"In order to preserve an error in the giving or failure to give jury instructions, a party must make a specific objection on the record." *People v Fletcher*, 260 Mich App 531, 558; 679 NW2d 127 (2004). Defendant objected to the prosecution's request for an instruction regarding his false exculpatory statements and the flight instruction, and also requested M Crim JI 11.34b.

Defendant also objected after the trial court read M Crim JI 7.16(3)(a), and argued that the jury could improperly use the fact that defendant had drugs or a gun to find that he was not entitled to claim self-defense. He did not, however, expressly request an instruction that his admission to the felon-in-possession charge did not preclude him from asserting self-defense. Therefore, defendant's claims are preserved, except with regard to his argument regarding the felon-in-possession admission.

This Court reviews de novo questions of law arising from the provision of jury instructions. *People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013).

> When reviewing a claim of instructional error, this Court views the instructions as a whole to determine whether the issues to be tried were adequately presented to the jury. This Court reviews for an abuse of discretion the trial court's decision regarding the applicability of a jury instruction to the facts of a specific case. The trial court abuses its discretion when its outcome falls outside the range of principled outcomes. [*People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014) (citations omitted).]

"The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *Guajardo*, 300 Mich App at 34 (citation and quotation marks omitted). "[A] miscarriage of justice occurs where it affirmatively appear[s] that it is more probable than not that the error was outcome determinative." *People v Lyles*, 498 Mich 908, 908; 870 NW2d 728 (2015) (citation and quotation marks omitted). "Unpreserved claims of . . . instructional error are reviewed for plain error." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

> A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them. The trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction. [*Armstrong*, 305 Mich App at 239-240 (citations and quotation marks omitted).]

"Even if imperfect, a jury instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Henderson*, 306 Mich App at 4 (citation and quotation marks omitted).

A. DEFENDANT'S FALSE EXCULPATORY STATEMENTS

"A prosecutor may, in certain instances, offer evidence that an exculpatory statement is false as circumstantial evidence of guilt." *People v Seals*, 285 Mich App 1, 5; 776 NW2d 314 (2009). In this case, the trial court instructed the jury, in part, as follows:

> The prosecution has introduced evidence of a statement that it claims the Defendant made. Before you may consider such an out of court statement against the Defendant you must first find that the Defendant actually made the statement as given to you.

If you find that the Defendant did make the statement you may give the statement whatever weight you think it deserves. In deciding this you should think about how and when the statement was made and about all the other evidence in the case.

You may consider the statement in deciding the facts of the case and in deciding if you believe the Defendant's testimony in court. The prosecution has introduced evidence of exculpatory statements which it claims were made by the Defendant to the police in which it claims were false.

Such statements, if made and if false may be considered by you as circumstantial evidence of guilt. Before you may consider any such statements as evidence against the Defendant you must determine whether the statements were made by the Defendant, determine whether the evidence has shown any of the statements to be false and if you determine that any of these statements were made and were false you must determine whether the statements relate to the elements of the crime charged.

Proof of a false exculpatory statement may then be used by you to determine the guilt or innocence of the Defendant to the charged offenses.

Defendant argues that the instruction should have been limited to the felon-in-possession and felony-firearm charges because he did not know about the shooting at the time he made the false exculpatory statements. Although the officer-in-charge did not initially tell defendant that he was being investigated for murder, and defendant claimed he did not know about the murder when he lied to the police, the jury could have disbelieved defendant, and found that defendant intentionally shot the victim and, thus, was trying to exculpate himself of any crimes related to the shooting when he made the false statements. Defendant also admitted that he fired his weapon, yet he told the police that he was not in possession of a weapon. Thus, the instruction was supported by a rational view of the evidence, and the trial court did not err or abuse its discretion in providing this instruction to the jury.

B. M CRIM JI 7.16(3)(A)

Next, defendant argues that the trial court should not have read M Crim JI 7.16(3)(a), which provides that "a person is not required to retreat if the person has not or is not engaged in the commission of a crime at the time the deadly forced is used." The trial court instructed the jury, in part, as follows:

Further, a person is not required to retreat if the person, A, has not or is not engaged in the commission of a crime at the time the deadly force is used and, B, has a legal right to be where the person is at the time and, C, has an honest and reasonable belief that the use of deadly force is necessary to prevent imminent death and/or great bodily harm of the person or another.

In discussing the jury instruction with the parties, the trial court read M Crim JI 7.16 and stated, "Okay. I'm printing that one and seven point six A does not apply." The trial court went on to discuss M Crim JI 7.17. Given that the trial court was discussing M Crim JI 7.16 at that

time, it may have intended to say that M Crim JI 7.16(3)(a) did not apply. However, when defendant objected after the instructions were read, the trial court did not recall saying that it would not read paragraph (3)(a). Even if the trial court stated that it would not read paragraph (3)(a), paragraph (3)(a) is part of a conjunctive list and defendant fails to explain how the instruction was improper.

Rather, defendant argues that the trial court should have provided further explanation and instructed the jury that defendant's admission to being a felon in possession of a firearm did not preclude him from asserting self-defense. Defendant cites *Guajardo*, 300 Mich App at 40, in which this Court held:

> [A] felon possessing a firearm is not precluded from raising self-defense under the [Self-Defense Act, MCL 780.971 *et seq.*] when there is evidence that would allow a jury to conclude that criminal possession of a firearm was justified because the accused had an honest and reasonable belief that the use of deadly force was necessary to prevent imminent death, great bodily harm, or sexual assault to himself or herself or to another. [Citation omitted.]

In that case, the trial court refused to instruct the jury on self-defense based on its finding that the defendant had testified that the gun accidentally discharged. *Id*. at 33-34. This Court concluded that the fact that the defendant was a convicted felon and was precluded from possessing a firearm did not prevent him from asserting self-defense, but there was no evidence that would have allowed the jury to find that the defendant's criminal possession of the rifle was justified by an honest and reasonable belief that it was necessary for him to use deadly force to prevent imminent death or great bodily harm to himself or to another. *Id*. at 41.

In this case, defendant was not prevented from asserting the defense of self-defense and the trial court instructed the jury on the elements of self-defense. Moreover, defendant did not request any explanation that his admission of guilt to the felon-in-possession charge did not preclude him from asserting self-defense, and the *Guajardo* Court did not hold that any additional instruction should be given. Accordingly, defendant fails to establish plain error affecting his substantial rights.

To the extent defendant is arguing that the defense of self-defense applied to the felon-in-possession charge, we disagree. Because defendant *arrived* with the gun, there was no evidence that would have allowed the jury to find that defendant's criminal possession of the gun was justified by an honest and reasonable belief that it was necessary for him to use deadly force to prevent imminent death or great bodily harm to himself or to another. Thus, the defense of self-defense was not available to the felon-in-possession charge.

C. M CRIM JI 11.34b

Defendant next argues that the trial court should have read M Crim JI 11.34b, which provides:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another

individual anywhere he or she has the legal right to be, with no duty to retreat, if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

(b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual.

(2) An individual who has not or is not engaged in the commission of a crime at the time he or she used force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be, with no duty to retreat, if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

Defendant cites *People v Goree*, 296 Mich App 293, 304-305; 819 NW2d 82 (2012), in which this Court held that the trial court erred by instructing the jury that there could be no defense of self-defense to the charge of felony-firearm. *Goree* involved a dispute between neighbors. *Id*. at 294. The defendant claimed that the victim reached behind his back and threatened, "I have something for you." *Id*. at 295. Fearing that the victim had a gun, the defendant drew his concealed weapon, for which he had a permit to carry, and fired at the victim. *Id*. at 295-296. The jury acquitted the defendant of assault, but convicted him of felony-firearm. *Id*. at 296. This Court concluded that there was evidence that the defendant acted in self-defense when he drew his weapon and fired. *Id*. at 305. This Court stated that the defendant "introduced evidence from which a jury could conclude that defendant's criminal possession of the firearm was justified because defendant honestly and reasonably believed that his life was in imminent danger and that it was necessary for him to exercise force to protect himself." *Id*. This Court also concluded that "[t]he trial court's erroneous instruction that defendant's act of felony-firearm could not be justified by self-defense was prejudicial." *Id*.

In this case, the trial court found that, under the facts, there was no defense of self-defense to the felony-firearm charge because defendant possessed the gun when he arrived on Braile Street. The trial court erroneously found that *Goree* involved the defendant taking a firearm away from the decedent in self-defense. However, those are the facts in *People v Dupree*, 486 Mich 693, 698-699; 788 NW2d 399 (2010), a case that the *Goree* Court cited. *Goree*, 296 Mich App at 302-303. In *Goree*, the defendant arrived with the weapon, just as defendant did in this case, and the Court still held that the defense of self-defense could apply to the felony-firearm charge. *Id*. at 295-296, 305.

Nonetheless, in this case, there was no evidence from which a jury could conclude that defendant's criminal possession of the firearm was justified because defendant honestly and reasonably believed that his life was in imminent danger and that it was necessary for him to exercise force to protect himself. Unlike the defendant in *Goree*, defendant was a felon in possession of a firearm. Felon-in-possession can be the underlying felony for a felony-firearm

charge. See *People v Dillard*, 246 Mich App 163, 168; 631 NW2d 755 (2001). Accordingly, the jury could have found that defendant was guilty of felony-firearm when he arrived at the scene. Moreover, unlike in *Goree*, the trial court did not expressly instruct the jury that there was no defense of self-defense to the felony-firearm charge,[1] and it is evident that the jury rejected defendant's claim of self-defense with regard to the second-degree murder charge and, therefore, would have also rejected it with regard to the felony-firearm charge.

### D. M CRIM JI. 4.4

Lastly, defendant argues that the flight instruction was not warranted because he left the scene because he was being shot at and he did not attempt to flee at the time of his arrest. The trial court instructed the jury, in part, as follows:

> There has been some evidence that the Defendant tried to run away, tried to hide, ran away or hid after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake or fear.

> However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true and if true whether it shows that the Defendant had a guilty state of mind.

Although there was no evidence that defendant attempted to flee at the time he was arrested, several witnesses testified that defendant, or the driver of the red Charger, drove away after the shooting. And there was no evidence that defendant went directly to the police. Defendant, however, testified that he drove away after someone fired shots at his car. Westley and Hawkins also saw the other shooter shooting at defendant's car. Nonetheless, there was also evidence that defendant fired the first shot. Thus, the jury could have found that defendant drove away because of his consciousness of guilt, despite the fact that he was also being shot at by another shooter. A rational view of the evidence supported the instruction, and the trial court did not err or abuse its discretion in providing this instruction to the jury.

### IV. RIGHT TO PRESENT A DEFENSE

Finally, defendant contends that he is entitled to a new trial because he was denied the constitutional right to present a defense. We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (citation and quotation marks omitted). Although defendant objected below to most of the alleged errors that he raises in this issue, defendant only raised the right to present a defense with regard to his motion for an expert. Thus, that argument is preserved, but defendant's other

---

[1] Again, the prosecution did, however, argue that self-defense did not apply to either firearm charge.

claims are unpreserved. "This Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). "[A]n unpreserved claim of constitutional error is reviewed for plain error affecting substantial rights." *Id*. at 483 (citation and quotation marks omitted).

"It is well-established that a criminal defendant has a constitutional right to a meaningful opportunity to present a complete defense. A criminal defendant must be provided a meaningful opportunity to present evidence in his or her own defense. That right is not unlimited." *Bosca*, 310 Mich App at 47 (citations and quotation marks omitted).

> The right to present a complete defense may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. Michigan, like other states, has a legitimate interest in promulgating and implementing its own rules concerning the conduct of trials. And our Supreme Court has broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Thus, an accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve. [*People v King*, 297 Mich App 465, 473-474; 824 NW2d 258 (2012) (citations and quotation marks omitted).]

Defendant argues that: (1) the trial court denied his pretrial motion for appointment of a ballistics and firearm expert at the state's expense, (2) the trial court refused to allow defense counsel to ask questions about whether this case involved a drug dispute, (3) the trial court refused to allow Cleveland Dunklin, the victim's father, to testify that he had no knowledge of a person named Tone selling drugs or his wife using drugs, (4) the prosecutor badgered defendant and attacked his credibility, (5) the trial court denied defendant's motion for a mistrial and refused to allow defense counsel to impeach Felder with his prior testimony, (6) the trial court denied some of defense counsel's objections without hearing the substance of the objections, and (7) the trial court improperly instructed the jury. Defendant has, however, failed to properly present his claims by failing to brief the merits of his argument. See *Kelly*, 231 Mich App at 640-641. Defendant merely describes numerous actions by the trial court or the prosecution, but fails to explain how they were erroneous or how he was denied the right to present a defense.

With regard to the denial of his motion for an expert, defendant merely states that he brought a motion for the appointment of an expert and the trial court denied it. Defendant does not explain how the trial court's ruling was erroneous, or how he was denied the right to present a defense. Thus, defendant fails to establish that he was denied the right to present a defense.

Next, defendant states that he was prevented from asking questions about whether the incident was about a drug dispute, but, again, he fails to explain how the trial court's ruling was erroneous or how he was denied the right to present a defense. The prosecution objected to defense counsel's questions to Felder about whether the incident related to a drug dispute on the grounds that Felder was speculating and lacked personal knowledge. The trial court sustained the objections. The prosecution also objected to defense counsel asking Dunklin whether he

knew that Tone sold drugs on the grounds of relevancy and speculation. Outside the presence of the jury, Dunklin testified that he did not know whether his wife bought drugs from Tone and that he had never seen Tone sell dope. The trial court ruled that because the witness had no knowledge, there was no reason to ask those questions in front of the jury. Defendant fails to argue that the trial court's evidentiary rulings were erroneous, or that the evidentiary rules on which it relied are arbitrary or disproportionate to the purposes they are designed to serve. Thus, defendant fails to establish plain error.

Defendant also claims that by excluding Dunklin's testimony, defendant was unable to establish that Dunklin had no knowledge of Tone selling drugs or his wife using drugs, which would have supported defendant's testimony that C-Murder and C-Money were two different people. Specifically, defendant argues that, during his own testimony, he tried to explain that he did not know C-Money, that he had thought the person in the photograph was C-Murder, and that he was talking about C-Murder when he said that he sold drugs to his mother. As previously discussed, the trial court excluded Dunklin's testimony that he did not know of his wife buying drugs from Tone based on his lack of knowledge. Defendant claims that Dunklin's excluded testimony should have been allowed because it would have supported defendant's testimony that C-Money and C-Murder were two different people. Defendant, however, never argued for the admission of Dunklin's testimony on the basis that it was necessary to corroborate or support his own testimony, which was not yet given at the time Dunklin testified. And while Dunklin's excluded testimony may have been consistent with defendant's testimony that he was not talking about the victim, defendant fails to establish that the exclusion of the testimony was erroneous or affected his substantial rights. Additionally, Dunklin did testify in front of the jury that he had no knowledge of his wife associating with Tone. Thus, defendant fails to establish plain error affecting his substantial rights.

With regard to the prosecution's alleged badgering of defendant, defendant again fails to explain how he was denied the right to present a defense. Defendant cites numerous instances in which the prosecutor asked defendant, in some form, whether it was difficult to keep track of his lies. Defense counsel only objected to some of the questions and argued at one point that the prosecutor was arguing with defendant and asking the same questions over and over; the trial court overruled that objection. On one occasion, the trial court stated that the question had already been answered. On another occasion, the trial court allowed the question as it related to this case specifically. On another occasion, the trial court told the prosecutor to save the issue for closing argument. Defendant contends that his credibility was under constant attack by the prosecutor, but defendant admitted having lied to the police, his mother, and his grandmother. Accordingly, defendant fails to establish that the prosecutor's questions constituted plain error affecting his substantial rights.

Defendant next states that the trial court denied his motion for a mistrial, which was based on the trial court's refusal to allow defendant to impeach Felder with his prior testimony; he argues that the prosecution was, however, allowed to impeach Felder. On cross-examination, defense counsel asked Felder if the shooting arose out of a drug transaction, and Felder said no. Defense counsel sought to impeach Felder with his prior testimony that the shooting was about drugs being sold. The trial court did not allow defense counsel to do so, stating that Felder was not an expert and such testimony was a conclusion. Defendant moved for a mistrial based on the trial court's refusal to allow him to impeach Felder with his prior inconsistent testimony, which

he claimed prevented him from receiving a fair trial. The trial court denied the motion, finding that defendant's disagreement with its evidentiary ruling was not a proper basis for a mistrial. Defendant fails to explain how the trial court's evidentiary ruling or ruling on his motion for a mistrial was erroneous, or how he was denied the right to present a defense. Thus, defendant fails to establish plain error affecting his substantial rights.

Defendant also argues that the trial court overruled some of his objections without hearing the substance of the objections. Defendant cites one occasion in which the trial court overruled defense counsel's objection without hearing the substance of the objection. The prosecutor asked defendant's fiancée what time defendant went to Braile to buy weed and she did not know. The prosecutor then asked if defendant told her that he went to Braile another time and she said no. The prosecutor began to ask another question and defense counsel asked to approach the bench. The trial court asked whether defense counsel had an objection to the question and defense counsel stated that he had an objection to this line of questioning. The trial court overruled the objection. Defendant does not explain what the substance of the objection would have been or how the trial court's ruling denied him the right to present a defense. Defendant also cites an occasion on which he was not allowed to approach the bench to make an objection during the prosecutor's direct examination of Westley, but shortly afterward the prosecution was allowed to approach. When defense counsel requested to approach, the trial court told him that he would have an opportunity to make an objection later. Subsequently, the prosecutor stated that she was finished with her direct examination, but she had one issue to address, and she asked to approach the bench. The trial court allowed her to do so and defense counsel stated, "She gets to approach, I don't." Defendant again fails to explain how this was error or how he was denied the right to present a defense. Therefore, defendant fails to establish plain error affecting his substantial rights.

Lastly, defendant claims that the trial court's instructions to the jury denied him the right to present a defense, but fails to elaborate on his argument. He incorporates his earlier argument, but, as discussed previously, defendant fails to establish any instructional error. Accordingly, defendant fails to establish plain error affecting his substantial rights.

Affirmed.


/s/ Michael F. Gadola
/s/ Deborah A. Servitto

-12-