PEOPLE v HENDERSON

Docket No. 311864. Submitted June 4, 2014, at Grand Rapids. Decided
June 26, 2014, at 9:00 a.m. Leave to appeal sought.

Jaquan Henderson was convicted in the Kalamazoo Circuit Court of
second-degree murder, MCL 750.317, assault with intent to com-
mit murder, MCL 750.83, being a felon in possession of a firearm,
MCL 750.224f, and three counts of possession of a firearm during
the commission of a felony, MCL 750.227b. During the trial, the
court, Pamela L. Lightvoet, J., did not give an instruction on
duress in response to the jury's request for one. Defendant
appealed, including among the arguments raised that the court
had erred by failing to give the instruction.

The Court of Appeals *held*:

1. Duress is not a defense to homicide. The rationale underly-
ing this common-law rule is that one cannot submit to coercion to
take the life of an innocent third person, but should instead risk or
sacrifice his or her own life. Because duress is not a defense to
homicide, the trial court did not err by declining to instruct the
jury in this regard with respect to defendant's murder charge.

2. Defendant also argued that the basic principle that duress is
not a defense to homicide does not apply if the defendant did not
actually commit the murder but was instead prosecuted as an
aider and abettor to murder. If directly committing a homicide is
not subject to a duress defense, however, assisting a principal in
the commission of a homicide cannot be subject to a duress defense
either, considering that an aider and abettor to murder is assisting
in taking the life of an innocent third person instead of risking or
sacrificing his or her own life.

3. Defendant further argued that an instruction on duress
should have been given with regard to his conviction of assault
with intent to commit murder. Application of a duress defense
in the context of assault with intent to commit murder would be
entirely incongruous with the principle underlying the
common-law rule. It was only the fortunate fact of one victim's
survival, not a difference in defendant's conduct, that rendered
defendant guilty of assault with intent to commit murder rather
than murder with respect to that victim. Given that a defendant

may not justify a homicide with a claim of duress, it logically follows that a defendant cannot similarly justify conduct intended to kill simply because he or she failed in the effort.

4. The elements of assault with intent to commit murder are (1) an assault (2) with an actual intent to kill (3) that, if successful, would make the killing murder. The elements of second-degree murder consist of (1) a death (2) caused by an act of the defendant (3) with malice and (4) without justification or excuse. Malice is the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of the behavior would be to cause death or great bodily harm. Aiding and abetting describes any type of assistance given to the perpetrator of a crime by words or deeds that were intended to encourage, support, or incite the commission of that crime. A defendant must have had the criminal intent to aid, abet, procure, or counsel the commission of an offense. A defendant is criminally liable for the offenses he or she specifically intended to aid or abet or had knowledge of, as well as the crimes that are the natural and probable consequences of those offenses. Therefore, the prosecution must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew that the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense.

5. There was sufficient evidence to support defendant's convictions and, in particular, to establish that he possessed the requisite intent for each offense. Intent may be inferred from circumstantial evidence. Because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish his or her state of mind. Intent to kill may be inferred from all the facts in evidence, including the use of a deadly weapon, a motive to kill, or flight and lying (which may reflect a consciousness of guilt).

Affirmed.

HOMICIDE — AIDING AND ABETTING — ASSAULT WITH INTENT TO COMMIT MURDER — DEFENSES — DURESS.

Duress is not a defense to homicide; a defendant charged with assault with intent to commit murder or aiding or abetting second-degree murder is similarly not entitled to a jury instruction on duress as a defense.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Jeffrey S. Getting*, Prosecuting Attorney, and *Heather S. Bergmann*, Assistant Prosecuting Attorney, for the people.

*Mary A. Owens* for defendant.

Before: MURPHY, C.J., and SHAPIRO and RIORDAN, JJ.

MURPHY, C.J. Following a jury trial, defendant appeals as of right his convictions for second-degree murder, MCL 750.317, assault with intent to commit murder (AWIM), MCL 750.83, being a felon in possession of a firearm, MCL 750.224f, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 35 to 80 years' imprisonment for the murder and AWIM convictions, to 76 to 360 months' imprisonment for the felon-in-possession conviction, and to 2 years' imprisonment for each of the felony-firearm convictions. We affirm.

On appeal, defendant first argues that the trial court erred by declining to give a duress instruction in response to a request for such an instruction by the jury. Rather than instruct on duress, the trial court directed: "You must follow the instructions given to you. Duress is not a defense to homicide/murder." Defense counsel objected to the trial court's response to the jury, thereby preserving this issue for review. See MCR 2.512(C). "Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

A defendant has the right to have a properly instructed jury consider the evidence against him or her, and it is the trial court's role "to clearly present the case to the jury and to instruct it on the applicable law." *Id.*; see also MCL 768.29. "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). When examining instructions to determine if an error has occurred, the instructions must be considered "as a whole, rather than piecemeal . . . ." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). Even if imperfect, a jury instruction is not grounds for setting aside a conviction "if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id.* at 501-502.

"Duress is a common-law affirmative defense." *People v Lemons*, 454 Mich 234, 245; 562 NW2d 447 (1997). To be entitled to an instruction on an affirmative defense, such as duress, a defendant asserting the defense must produce some evidence from which the jury can conclude that the essential elements of the defense are present. *Id.* at 246. Specifically, to merit a duress instruction, a defendant bears the burden of producing some evidence from which the jury could conclude the following:

> A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;
>
> B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;
>
> C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

D) The defendant committed the act to avoid the threatened harm. [*Id.* at 247.]

A threat of future injury is not sufficient; rather, "the threatening conduct or act of compulsion must be 'present, imminent, and impending . . . .' " *Id.*, quoting *People v Merhige*, 212 Mich 601, 610; 180 NW 418 (1920). Moreover, the threat " 'must have arisen without the negligence or fault of the person who insists upon it as a defense.' " *Lemons*, 454 Mich at 247 (citation omitted).

Relevant to defendant's case, it is well established that duress is not a defense to homicide. *People v Gimotty*, 216 Mich App 254, 257; 549 NW2d 39 (1996); *People v Moseler*, 202 Mich App 296, 299; 508 NW2d 192 (1993); *People v Etheridge*, 196 Mich App 43, 56; 492 NW2d 490 (1992); *People v Travis*, 182 Mich App 389, 392; 451 NW2d 641 (1990). "The rationale underlying the common law rule is that one cannot submit to coercion to take the life of a third person, but should risk or sacrifice his own life instead." *People v Dittis*, 157 Mich App 38, 41; 403 NW2d 94 (1987). Because duress is not a defense to homicide, the trial court did not err by declining to instruct the jury in this regard with respect to defendant's murder charge. Defendant maintains that the principle that duress is not a defense to homicide is inapplicable when he did not actually commit the murder himself but was instead prosecuted primarily as an aider and abettor to murder. We fail to see the logic in this argument, and defendant provides no supporting authority that an aider and abettor to murder can employ a duress defense even though a principal is not entitled to do so. If directly committing a homicide is not subject to a duress defense, assisting a principal in the commission of a homicide cannot be subject to a duress defense either, considering that an

aider and abettor to murder is assisting in taking the life of an innocent third person instead of risking or sacrificing his or her own life. See *Dittis*, 157 Mich App at 41. The underlying rationale articulated in *Dittis* is equally sound and not distinguishable in the context of aiding and abetting murder. The court in *State v Dissicini*, 126 NJ Super 565, 570; 316 A2d 12 (NJ App, 1974), aff'd 66 NJ 411 (1975), in rejecting a similar argument, observed:

> Defendant does not dispute the general rule, but argues that it is applicable only to a defendant who is the actual perpetrator of the killing, and that the defense should be available to one such as he who did not directly kill but only aided and abetted. Authoritative discussion of the point is sparse . . . and this is undoubtedly so because the argument has little merit.

The California Supreme Court has stated that "because duress cannot, as a matter of law, negate the intent, malice or premeditation elements of a first degree murder, we further reject defendant's argument that duress could negate the requisite intent for one charged with aiding and abetting a first degree murder." *People v Vieira*, 35 Cal 4th 264, 290; 25 Cal Rptr 3d 337; 106 P3d 990 (2005). Even the United States Court of Appeals for the Ninth Circuit has noted that duress does not excuse murder and "in many jurisdictions, duress does not excuse attempted murder or aiding and abetting murder[.]" *Annachamy v Holder*, 733 F3d 254, 260 n 6 (CA 9, 2012). We are unaware of any Michigan precedent to the contrary in which the issue was directly confronted.

Defendant also contends on appeal that duress was available as a defense regarding his AWIM conviction.[1]

---

[1] Defendant concedes on appeal that the facts did not support an instruction on duress in regard to the felon-in-possession conviction.

However, defendant has not provided any authority for the proposition that a duress defense applies to AWIM, nor are we aware of any such rule. On the contrary, application of a duress defense in the context of AWIM would be entirely incongruous with the principle that "one cannot submit to coercion to take the life of a third person, but should risk or sacrifice his own life instead." *Dittis*, 157 Mich App at 41. AWIM is, by definition, an assault with the intent to kill, "which, if successful, would make the killing murder." *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010) (quotation marks and citation omitted). In other words, it is only the fortunate fact of the victim's survival—not a difference in the defendant's conduct—that renders the defendant guilty of AWIM as opposed to murder. Given that a defendant may not justify homicide with a claim of duress, it logically follows that a defendant cannot justify conduct intended to kill simply because he or she failed in the effort. Instead, for one faced with the choice between saving oneself and endeavoring to kill an innocent third person, the law recognizes that one "should risk or sacrifice his own life instead." See *Dittis*, 157 Mich App at 41; see also *State v Mannering*, 112 Wash App 268, 276; 48 P3d 367 (2002) (stating that allowing duress as a defense to attempted murder but not to murder would be absurd because just as "duress is not a defense to murder, it is also not a defense to attempted murder").

Defendant argues that by failing to instruct the jury on duress relative to the AWIM charge, the trial court effectively allowed for an AWIM conviction absent the need to establish an intent to kill. This argument lacks merit; the trial court specifically instructed the jury that the prosecution was required to prove beyond a reasonable doubt that there was an intent to kill with respect to the AWIM charge. And the lack of a duress

instruction in no way alleviated the prosecution's burden to establish an intent to kill. In sum, duress is not a defense to AWIM, and, accordingly, the trial court did not err by failing to instruct on duress.

Defendant next argues on appeal that the trial court erred by omitting an element of AWIM from the instructions, an error that defendant maintains amounts to structural error. However, by approving the jury instructions as given, defense counsel waived this argument. *Kowalski*, 489 Mich at 503-505. Additionally, the trial court's instruction on AWIM was consistent with CJI2d 17.3, now known as M Crim JI 17.3, except that the court did not include the following bracketed language: "the circumstances did not legally excuse or reduce the crime." Defendant contends that the failure to include this language eliminated the prosecution's obligation to prove that, had the assault with intent to kill been successful, it would have amounted to murder. Defendant ties the failure to instruct on the matter to the issue of duress, claiming that duress constituted a legal excuse. However, we have already rejected the duress argument, and defendant does not set forth any other mitigating basis that would have necessitated the instructional language that was not included by the court in instructing the jury. Accordingly, even assuming an instructional error on the single element, there was no prejudice and thus no need to reverse given that "[t]he trial court's instructions, when viewed as a whole, adequately protected defendant's rights." *People v Carines*, 460 Mich 750, 770-771; 597 NW2d 130 (1999).

Lastly, defendant challenges the sufficiency of the evidence supporting the second-degree murder and AWIM convictions. Appeals regarding the sufficiency of the evidence are reviewed de novo. *People v Lueth*, 253

Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). Juries, and not appellate courts, hear the testimony of witnesses; therefore, we defer to the credibility assessments made by a jury. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). "It is for the trier of fact . . . to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime. *Carines*, 460 Mich at 757. We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Relevant to defendant's convictions, the elements of AWIM, once again, are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Ericksen*, 288 Mich App at 195-196 (quotation marks and citation omitted). The elements of second-degree murder consist of " '(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.' " *Reese*, 491 Mich at 143, quoting *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). The term "malice" has been defined as "the intent to kill, the intent to cause great bodily

harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Goecke*, 457 Mich at 464.

In defendant's case, the jury was also instructed on an aiding-and-abetting theory of criminal liability. See MCL 767.39. "The phrase 'aids or abets' is used to describe any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). To show that an individual aided and abetted the commission of a crime, the prosecution must establish

> "that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." [*Carines*, 460 Mich at 757 (citation omitted).]

With respect to the intent element, our Supreme Court in *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006), elaborated:

> We hold that a defendant must possess the criminal intent to aid, abet, procure, or counsel the commission of an offense. A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet. Therefore, the prosecutor must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the

charged offense was a natural and probable consequence of the commission of the intended offense.

On appeal, defendant focuses his sufficiency arguments on his state of mind and whether it was shown that he possessed the requisite intent to commit second-degree murder and AWIM. Relevant to his arguments, intent may be inferred from circumstantial evidence. *McGhee*, 268 Mich App at 623. Indeed, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind . . . ." *Kanaan*, 278 Mich App at 622. Intent to kill may be inferred from all the facts in evidence, including the use of a deadly weapon. See *Carines*, 460 Mich at 759. Minimal circumstantial evidence is sufficient to show an intent to kill, and that evidence can include a motive to kill, along with flight and lying, which may reflect a consciousness of guilt. *People v Unger*, 278 Mich App 210, 223, 225-227; 749 NW2d 272 (2008).

Viewing the evidence in this case in the light most favorable to the prosecution, it is plain that there was sufficient evidence to support defendant's convictions and, in particular, to establish that he possessed the requisite intent for each offense. The evidence showed that defendant and his accomplices, Steven Anderson and Robert Wright, believed that one of the victims had been involved in assaulting and robbing Wright a month before the present shooting. Defendant had previously told Wright that he would help him "whoop" those involved with the assault and, by defendant's own admission, he went to the murder scene intending to fight one of the victims in exchange for money. While claiming that he only intended a fistfight, defendant brought a .380 caliber handgun to the scene. He

brought this gun knowing that Wright wanted to kill those involved in his assault. Anderson and Wright also had guns. Further, defendant admitted that he was present at the shooting and that he, like Wright and Anderson, fired his gun. Consistent with this admission, police recovered six .380 caliber shells at the scene, a shotgun casing, and later, at another location, spent cartridges for the .44 caliber weapon that had been used by Wright and disposed of by Anderson. As a result of the shooting, one victim was fatally shot in the chest. The other victim suffered gunshot wounds to the leg. As indicated in *Robinson*, 475 Mich at 15, a "defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet." The testimony rationally supported a finding that defendant intended to aid or abet a murder, that he had knowledge that a murder was going to be committed, or that he intended to aid and abet conduct or an offense for which the natural and probable consequence was a homicide.

Furthermore, defendant, like Wright and Anderson, fled after the shooting. Defendant then proceeded to disassemble his gun, and he disposed of all three guns in the Kalamazoo River. He also destroyed the cellular telephone that he had been using to communicate with Wright on the day of the shooting. He repeatedly lied to police about his involvement, notably withholding information about which gun he had fired until police deliberately misled him by indicating that the shotgun blast had killed the victim. Only when misinformed in this manner did defendant acknowledge that he fired the .380 caliber weapon, and, when asked why he withheld this information, he told police that he did not want to say anything until he knew which gun was

actually the murder weapon. From this evidence, a jury could reasonably infer that defendant feared that he might have fired the fatal shot, meaning that, contrary to defendant's claims, he did aim at the victims, intending to kill them. Overall, the evidence was sufficient to support defendant's convictions of second-degree murder and AWIM.

In arguing to the contrary on appeal, defendant maintains that he went to the scene at Wright's behest for a fistfight, not a shooting, and that he fired his weapon harmlessly into the air. These arguments do not entitle him to relief, however, because the credibility of these assertions was a question for the jury, and it was free to reject his testimony in this regard. See *Wolfe*, 440 Mich at 515. Defendant also again raises the question of duress, arguing that the jury should have been instructed on this defense and that, if properly instructed, the jury likely would have acquitted him. However, as discussed earlier, defendant was not entitled to a duress instruction and, consequently, his arguments in this regard lack merit. Ultimately, the jury disbelieved defendant's claims and concluded that the requisite intent to kill for AWIM and the requisite malice for second-degree murder had been proved. There was sufficient evidence to support the jury's conclusions in this regard, and reversal is unwarranted.

Affirmed.

SHAPIRO and RIORDAN, JJ., concurred with MURPHY, C.J.