# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GARRY LEE DAVIS,

        Defendant-Appellant.

UNPUBLISHED
October 11, 2016

No. 327835
Wayne Circuit Court
LC No. 15-000119-FH

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm) (second offense), MCL 750.227b. He was sentenced as a second habitual offender, MCL 769.10, to five months to seven years' imprisonment for the felon-in-possession conviction, and a consecutive five-year prison term for felony-firearm (second offense). Defendant appeals as of right, and for the reasons stated in this opinion, we affirm.

## I. FACTS AND PROCEEDINGS

Defendant was identified by the Detroit Police Department (DPD) as a "person of interest" in an armed robbery. A search of the home of defendant's parents was conducted in December 2014 pursuant to a search warrant. DPD Officer Donald Covington testified that he recovered a Michigan identification card and a Michigan Department of Corrections (MDOC) identification card belonging to defendant in an upstairs bedroom, both listing the address of the home searched as defendant's address. Defendant's father testified that the upstairs bedroom was defendant's bedroom. DPD Officer Matthew Bray testified that two firearms were found between the mattress and the box spring of the bed. One of the firearms was a "380 caliber blue steel automatic handgun"; the other was a "pump action shotgun with wooden grips." Defendant's father testified that the weapons were his, although he acknowledged that they were not registered to him. He further testified that the officers did not find the weapons in the upstairs bedroom. Instead, the shotgun was under his bed in his bedroom, and the pistol was under a couch in the basement. While acknowledging that he never came forward with this information until the day of trial, defendant's father stated that he contacted the DPD's Internal Affairs Unit. Defendant's father testified that he knew he had to dispose of his guns or defendant

-1-

could not live with his father after his release from prison.[1] Nonetheless, defendant's father explained, he kept the guns but did not tell defendant he had done so.

Following the jury's verdict, defendant filed a motion for a new trial and a *Ginther*[2] hearing, arguing that his trial counsel failed to investigate the case properly. He asserted that counsel met with him only twice, once in March 2015 and once two days prior to trial, only met with his father two days before trial, and never interviewed his mother or his girlfriend. Defendant provided affidavits from his parents and his girlfriend. In his affidavit, defendant's father reiterated that the police did not find the weapons in defendant's bedroom. He further averred that defendant and his girlfriend had not stayed at the home for at least two weeks before the search. Defendant's mother averred that her husband has kept his shotgun in their bedroom for years and, like her husband, stated that defendant and his girlfriend had not stayed at the home for at least two weeks before the search. Defendant's girlfriend, Preshus Gentry, maintained that she and defendant lived together at a different address starting in September 2014. Gentry further averred that when they spent the night at the home of defendant's parents, she "made up the bed in the upstairs bedroom . . . which included turning the mattress over" and that there was no gun in or underneath the bed.

Defendant's trial attorney, Carl Jordan, testified that the defense theory pursued at trial was that defendant "did not know that the weapon was in the house." Jordan stated that he consulted with defendant before trial "[o]n more than one occasion," the first time being shortly after defendant was arrested. He also stated that he met with defendant's father on more than one occasion. Jordan acknowledged that defendant's father told him that he contacted internal affairs, and Jordan acknowledged that he did not investigate whether this actually occurred. Jordan said that he did not recall whether defendant's father told him that defendant had not stayed in the house during the two weeks preceding the search.

Jordan also indicated that he spoke with defendant's mother and defendant's girlfriend. When asked why he did not call defendant's mother to testify, Jordan explained that he did not feel it was necessary to call both defendant's father and mother, and further noted that defendant's mother would only provide "more information for the jury to think that one of them is not telling the truth." Jordan did not recall asking Gentry when she and defendant last spent the night at the home of defendant's parents, but Jordan explained that he probably would not have called her at trial even if he had known what Gentry's asserted testimony would be because he believed that defendant's father provided enough information to acquit defendant. In fact, Jordan explained, having other witnesses testify that defendant did not stay at his parents' home would have been detrimental to defendant because defendant listed his parents' home address as his residence with the MDOC. The trial court rejected defendant's argument that his attorney failed to investigate his case and denied the motion for a new trial.

---

[1] Defendant stipulated that he was previously convicted of a "specified felony." MCL 750.224f(2).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## II. ANALYSIS

## A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence adduced at trial to support his convictions. We disagree.

We review this argument de novo, considering "the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Henderson*, 306 Mich App 1, 8-9; 854 NW2d 234 (2014). We defer to the credibility assessments of the jury. *Id*. at 9. Similarly, we will not interfere with the jury's role in deciding the weight of the evidence presented in the case. *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003).

To substantiate the charge of felon-in-possession, the prosecution was tasked with proving that defendant (1) possessed a firearm, (2) was convicted of a specified felony, and (3) had not had his right to possess a firearm restored. MCL 750.224f(2). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Bosca*, 310 Mich App 1, 22; 871 NW2d 307 (2015), lv held in abeyance 872 NW2d 492 (2015).

Defendant only argues that he did not possess the firearms for the purposes of either conviction. Actual possession is not required to be convicted of a possessory crime; instead, a person may be convicted on a finding that the person was in constructive possession of the items in issue. *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012). "The test for constructive possession is whether 'the totality of the circumstances indicates a sufficient nexus between defendant and the contraband.' " *Id*. at 91-92, quoting *People v Johnson*, 466 Mich 491, 500; 647 NW2d 480 (2002). " '[A] person has constructive possession if there is proximity to the article together with indicia of control.' " *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011) (citation omitted; alteration in original). In other words, "a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000) (quotation marks and citation omitted).

Circumstantial evidence and reasonable inferences arising from that evidence can establish each essential element of a crime. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Here, a reasonable juror could have found that defendant knew the location of the firearms and that they were reasonably accessible to him. Officer Bray testified that both firearms were between the mattress and the box spring of the bed in the upstairs bedroom. Defendant's father acknowledged that the upstairs bedroom is defendant's, and Officer Covington testified that he found defendant's state of Michigan identification card and MDOC identification card in that room. Given how closely connected defendant is to this bedroom, it is reasonable to conclude that he knew that the firearms were located in that room. Indeed, it would be difficult to be unaware of weapons underneath the mattress of the bed he slept on. And because the firearms were located beneath the mattress of the bed, it is reasonable to conclude that he had ready access to them. The testimony of defendant's father that the guns belonged to

-3-

him, that defendant did not know about them, and that they were not, in fact, located in defendant's bedroom does not undermine the conviction as assessing witness credibility is a matter to be left in the hands of the fact-finder. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).

Defendant also points to evidence that he had not spent the night at his parent's house for at least two weeks before the search. But the only evidence of defendant's residence presented at trial was the testimony of defendant's father that defendant resided in the upstairs bedroom of his home and Officer Covington's testimony that he found two of defendant's identification cards in that bedroom listing the home of defendant's parents as defendant's address.[3] Accordingly, there was sufficient evidence for the jury to conclude beyond a reasonable doubt that defendant possessed the two guns.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that his trial counsel was ineffective for failing to investigate his case. We disagree.

A challenge to trial counsel's representation presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review the trial court's factual findings for clear error and its constitutional determinations de novo. *Id.* "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013).

To show that trial counsel was ineffective, defendant must establish (1) that counsel's performance fell below an objective standard of reasonableness and (2) that he was prejudiced because of counsel's performance. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). Prejudice is established where " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.*, quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). There is a strong presumption that counsel rendered adequate assistance. *Id.* at 670.

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses," which means defenses that might have made a difference in the outcome of trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). Counsel must conduct reasonable investigations or reasonably determine that a certain investigation is unnecessary. *Trakhtenberg*, 493 Mich at 52. "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "[D]ecisions regarding what evidence to present

---

[3] Defendant cites the affidavits that he included with his motion for a new trial. This evidence was not presented to the jury and therefore cannot be considered in determining "whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." See *Henderson*, 306 Mich App at 9.

and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." *Dunigan*, 299 Mich App at 589-590.

Defendant argues that his trial counsel should have interviewed and called his mother and Gentry to testify at trial. Defendant's trial attorney testified at the *Ginther* hearing that he did, in fact, speak with defendant's mother and Gentry. We defer to the trial court's special opportunity to judge the credibility of the witnesses. See *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008).[4]

In her affidavit, defendant's mother contends that her husband keeps his shotgun in their bedroom on the lower level of the house and that Gentry had stayed with defendant in the home when he was there. Gentry averred that she has occasionally spent the night in defendant's bedroom in his parents' home and that she did not notice a gun under the mattress when she turned over the mattress when making the bed. The relevant import of this information, that the guns were not in the upstairs bedroom as three police officers had testified, was provided to the jury through the testimony of defendant's father that the guns found belonged to him and that the police did not find them in defendant's upstairs bedroom. The information provided by these two additional witnesses would have been cumulative and thus did not deprive defendant of a substantial defense.

Defendant's mother also contends in her affidavit that defendant had not stayed at the home for at least two weeks before the December search, and Gentry maintains that defendant had been living with her at a different address in Detroit since September. This information would have contradicted the testimony of defendant's father that defendant lived in the upstairs bedroom. And, notably, Officer Covington testified that he located two of defendant's identification cards in the upstairs bedroom. Further, defendant's trial attorney explained that he did not want to present information that defendant was living at a different address than the one he provided to the MDOC. This is a reasonable strategic decision, and defendant has therefore failed to establish ineffective assistance of counsel.

Finally, defendant argues that his counsel should have investigated the visit of defendant's father to the DPD Internal Affairs Unit. But he does not allege what information would have been discovered or how it would help his case. Presumably, evidence of the visit could counter the prosecution's implied contention that defendant's father fabricated his testimony about who owned the guns and where they were in the home because he never alerted authorities that the guns were not found in defendant's upstairs bedroom. But defendant's father did testify at trial that he called the Internal Affairs Unit regarding the search, and this testimony

---

[4] Defendant also briefly asserts that trial counsel did not interview any police officers in connection with the case, but does not otherwise raise an argument with regard to the police officers, rendering any potential argument on the issue abandoned on appeal. See *People v Smart*, 304 Mich App 244, 251; 850 NW2d 579 (2014) (" 'An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.' ") (citation omitted).

was not challenged. Accordingly, defendant fails to establish either prong of ineffective assistance of counsel with regard to this claim.

Affirmed.

/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly