# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JERRY THOMAS FICHT,

      Defendant-Appellant.

UNPUBLISHED
January 23, 2018

No. 334021
Macomb Circuit Court
LC No. 2015-004155-FH

Before: TALBOT, C.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his conviction for assault with intent to do great bodily harm less than murder, MCL 750.84. The court sentenced defendant as a fourth-offense habitual offender to 60 to 120 months' imprisonment. We affirm.

Defendant first argues that the trial court erred by refusing to instruct the jury on the elements of self-defense, and by giving an instruction on flight and concealment. We reject both of these arguments.

> We review questions of law arising from the provision of jury instructions de novo. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). However, we review a trial court's determination whether a jury instruction is applicable to the facts of a case for an abuse of discretion. *Id*. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). To the extent that we must interpret and apply relevant statutes, issues of statutory construction involve questions of law that we review de novo. *People v Ryan*, 295 Mich App 388, 400; 819 NW2d 55 (2012). [*People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013).]

Defense counsel requested M Crim JI 7.22 (Use of Nondeadly Force in Self-Defense or Defense of Others) and M Crim JI 7.20 (Burden of Proof—Self-Defense) be given to the jury. Defendant's theory of the case was that he acted in self-defense when Miller raised the leaf blower to defendant's face. The court denied this request, stating:

But how is that self-defense? From your client's perspective, how on earth is that self-defense going over to another man's property and—and I'm taking this from the testimony of the complaining witness, and punch him in the head because he's blowing the leaves on that lawn?

\*   \*   \*

I don't, I don't see where the self-defense instruction would be proper under the circumstances of this case so I'm not going to allow it.

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Crawford*, 232 Mich App 608, 619; 591 NW2d 669 (1998). "[O]nce the defendant injects the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of proof to exclude the possibility that the killing was done in self-defense." *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010) (quotation marks and citation omitted).

"Under the common law, the affirmative defense of self-defense justified the killing of another person if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *Guajardo*, 300 Mich App at 35 (quotation marks and citations omitted). "In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *Id*. "In 2006, the Legislature enacted the Self-Defense Act (SDA), MCL 780.971 *et seq*." *Id*. "[T]he SDA codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Id*. (quotation marks and citation omitted).

MCL 780.972 provides:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

(b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual.

(2) An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other

than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

The trial court did not err because a rational view of the testimony does not support the conclusion that defendant honestly and reasonably believed he was in imminent danger of harm from Miller. Defendant mischaracterizes the testimony when he argues that Miller "swung" the leaf blower at his head. The only testimony defense counsel was able to elicit from Miller on cross-examination is that he raised the leaf blower, but no evidence suggests it was done in an aggressive manner. Defendant was also the aggressor, as each eyewitness testified that defendant walked aggressively or "came charging" toward Miller on Miller's own front lawn. Further, the force used by defendant was excessive in relation to any threat Miller posed to defendant. The medical evidence suggested that Miller suffered a very serious blow to the head causing internal bleeding in the skull. Had he not received prompt medical attention, the bleeding would have likely led to death because of compression on the brain. Given the facts on the record, it was not outside the range of reasonable and principled outcomes for the court to deny defendant's request for a jury instruction on self-defense.

The trial court also did not abuse its discretion by instructing the jury on M Crim JI 4.4 regarding flight and concealment. The court instructed the jury that there had been some evidence that defendant ran away and hid and that such evidence does not prove guilt. M Crim JI 4.4(2) states, "A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt." The instruction tells the jury it is up to it to decide.

"A defendant has the right to have a properly instructed jury consider the evidence against him or her, and it is the trial court's role to clearly present the case to the jury and to instruct it on the applicable law." *People v Henderson*, 306 Mich App 1, 4; 854 NW2d 234 (2014) (quotation marks and citations omitted). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *Id*. (quotation marks and citation omitted). "When examining instructions to determine if an error has occurred, the instructions must be considered as a whole, rather than piecemeal." *Id*. (quotation marks and citation omitted). "Even if imperfect, a jury instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id*. (quotation marks and citation omitted).

Providing an instruction on flight and concealment was not an abuse of discretion because it fairly presented an issue to be tried and did not prejudice defendant's rights. The deputy's testimony was that he had to call out for defendant several times before he emerged. Defendant did not remain at the scene of the altercation but, rather, retreated to his home. The instruction clearly fits the facts of the case. Moreover, the instruction protected rather than prejudiced defendant's rights because it instructed the jury that flight and concealment do not necessarily imply guilt. Although defendant argues that he fled the scene because LaRose pointed a gun at him, the instruction told the jury that there are innocent reasons for running and hiding. Defendant's case was not prejudiced by the instruction on flight and concealment. And, as stated in *Henderson*, even if the instruction was imperfect, it would not be grounds for setting

aside a conviction because, as a whole, the instruction "fairly presented the issues to be tried and adequately protected the defendant's rights." *Henderson*, 306 Mich App at 4 (quotation marks and citation omitted).

Next, defendant argues that the trial court erred when it refused to strike Miller's testimony as a sanction for violating the sequestration order.

A trial court's decision whether to exclude testimony because of a violation of a sequestration order is reviewed for abuse of discretion. *People v Solak*, 146 Mich App 659, 669; 382 NW2d 495 (1985). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "The sequestration of witnesses is addressed by both court rule and statute." *People v Meconi*, 277 Mich App 651, 656; 746 NW2d 881 (2008) (SAWYER, J., concurring). MRE 615 provides:

> At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

"MCL 780.761, which is part of the Crime Victim's Rights Act, MCL 780.751 *et seq*., specifically addresses the issue of the sequestration of a victim who will be called as a witness[.]" *Meconi*, 277 Mich App at 657 (SAWYER, J., concurring). MCL 780.761 states:

> The victim has the right to be present throughout the entire trial of the defendant, unless the victim is going to be called as a witness. If the victim is going to be called as a witness, the court may, for good cause shown, order the victim to be sequestered until the victim first testifies. The victim shall not be sequestered after he or she first testifies.

"The purposes of sequestering a witness are to prevent him from coloring his testimony to conform with the testimony of another, and to aid in detecting testimony that is less than candid." *Meconi*, 277 Mich App at 654 (opinion of the Court) (quotation marks and citations omitted). "Additionally, the United States Supreme Court has recognized three sanctions that are available to a trial court to remedy a violation of a sequestration order: (1) holding the offending witness in contempt; (2) permitting cross-examination concerning the violation; and (3) precluding the witness from testifying." *Id*. (quotation marks and citations omitted). "[A] sequestration order alone does not automatically put the witnesses on notice that they are not to discuss their testimony . . . ." *People v Davis*, 133 Mich App 707, 714; 350 NW2d 796 (1984), citing *People v Stanley*, 71 Mich App 56, 61-62; 246 NW2d 418 (1976).

Here, the trial court did not give a specific instruction that the witnesses were not to discuss their testimony. The court merely answered, "Yes," when defense counsel asked, "Are we going to have witness sequestration?" No further elaboration was given. Therefore, there was no violation of the sequestration order here because the order did not specifically tell the

witnesses they were not allowed to discuss the case. *Davis*, 133 Mich App at 714. Further, under the plain language of MCL 780.761, the victim can only be sequestered "for good cause shown." Defense counsel made no argument at trial (and makes no argument on appeal) that there was any good cause to prevent Miller from hearing LaRose's testimony or discussing the incident with her. Finally, even if the court found a violation of the sequestration order, allowing defense counsel to cross-examine the witness about the violation is one of the proper remedies discussed in *Meconi*. In other words, merely because there was a violation of the sequestration order does not require the court to strike the testimony. The court allowed defense counsel to question Miller about his conversation with LaRose and allowed him to argue to the jury that she had coached him. There was no abuse of discretion.

Finally, defendant argues that there was insufficient evidence to find the specific intent required to sustain a conviction for assault with intent to do great bodily harm.

A challenge to the sufficiency of evidence is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "Due process requires that, to sustain a conviction, the evidence must show guilt beyond a reasonable doubt." *Id*. at 175. "In determining the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the prosecution." *Id*. "We do not consider whether any evidence existed that could support a conviction, but rather, we must determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt." *Id*. "[C]ircumstantial evidence and reasonable inferences arising from th[e] evidence can constitute satisfactory proof of the elements of a crime." *Id*. (alterations in original).

The elements of assault with intent to do great bodily harm less than murder are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citation omitted). "This Court has defined the intent to do great bodily harm as an intent to do serious injury of an aggravated nature." *Id*. (quotation marks and citations omitted).

Reviewing the evidence in the light most favorable to the prosecution, there was ample evidence to support a rational trier of fact finding beyond a reasonable doubt that defendant intended to seriously injure Miller. Eyewitnesses, including the victim, testified that defendant walked aggressively toward Miller and began yelling at him prior to the attack. Defendant's own statement to the deputy was that he was sick of Miller blowing leaves on his lawn and he began a verbal altercation with him. Witnesses testified that defendant punched Miller in the side of the head and that Miller was bleeding from his ear after the attack. The head is a vital organ and defendant struck it with such force as to cause life-threatening internal bleeding. Miller required emergency medical care and his surgeon testified that he needed urgent surgery to decompress the brain. A rational juror could conclude, based on the eyewitness and medical testimony, that defendant intended to seriously harm Miller.

Affirmed.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien