*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLICATED
June 18, 2019

Plaintiff-Appellee,

v

No. 341863
Muskegon Circuit Court
LC No. 15-000145-FC

KIERELLE MONTRELL BURNS,

Defendant-Appellant.

Before: K. F. KELLY, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

Defendant appeals by right his jury convictions of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve life without the possibility of parole for his murder conviction and to serve two years in prison for his felony-firearm conviction. Because defendant has not identified any errors that warrant relief, we affirm.

## I. BASIC FACTS

Defendant's convictions arise from the shooting death of Darnell Byrd in the early morning hours of September 5, 2015. Testimony and evidence established that defendant, Byrd, and Byrd's close friend, Josiah Fousse, worked for Jeremey Morton, who ran a criminal enterprise that distributed illegal narcotics in Muskegon, Michigan. There was testimony that Morton, Fousse, and Byrd had been involved in a homicide just days earlier and that Byrd had been arrested. Morton feared that Byrd was talking to police officers and arranged for Byrd to be bailed out of jail. Morton then fabricated a plan to commit a robbery. In actuality, he asked Fousse and defendant to kill Byrd. Evidence showed that Morton and his girlfriend dropped off defendant, Fousse, and Byrd by an alley that was near the place where they had told Byrd they would commit the robbery. Defendant and Fousse shot Byrd approximately 14 times as the three men walked down the alley. Defendant and Fousse then met up with Morton and fled to Grand Rapids where they were later apprehended.

## II. INSTRUCTIONAL ERROR

Defendant first argues that the trial court did not properly instruct the jury. More specifically, he maintains that the trial court should have instructed the jury on the lesser offense of manslaughter and should not have omitted the element on excuse or justification found in the instructions for first and second-degree murder. This Court reviews de novo whether the trial court properly instructed the jury. *People v Martin*, 271 Mich App 280, 337; 721 NW2d 815 (2006). This Court reviews the instructions as a whole to determine whether "the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried." *Id.* at 337-338 (quotation marks and citation omitted).

A defendant is entitled to have the jury instructed on a necessarily included lesser offense of a charged offense if a rational view of the evidence would support such an instruction. *People v Mendoza*, 468 Mich 527, 533; 664 NW2d 685 (2003). Voluntary and involuntary manslaughter are necessarily included lesser offenses of murder. *Id.* at 541. As such, defendant would have been entitled to an instruction on manslaughter, if a rational view of the evidence supported the instruction. There was, however, no evidence that defendant accidentally shot and killed Byrd. Accordingly, he was not entitled to an instruction on involuntary manslaughter. *Id.* at 536. Similarly, there was no evidence that he voluntarily killed Byrd, but did so while in "the heat of passion," which was caused by "adequate provocation" and that there was no lapse of time within which a reasonable person would have controlled his passions. *People v Roper*, 286 Mich App 77, 87; 777 NW2d 483 (2009). The provocation necessary to mitigate a homicide from murder to voluntary manslaughter is that which would cause a reasonable person to lose control and act out of passion rather than reason. *Id.* The evidence in this case showed that Morton formulated a plan to lure Byrd into a particular location so that defendant and Fousse could kill him. Defendant knew about the plan, accompanied the others to the location, and then shot and killed Byrd as intended. Nevertheless, defendant maintains that the evidence showed that he only participated in the planned murder out of fear for his life.

Michigan recognizes the defense of duress under which a person may be excused for committing a crime when acting out of fear of death or great bodily harm. *People v Lemons*, 454 Mich 234, 246-247; 562 NW2d 447 (1997). However, duress can never excuse murder. *People v Gimotty*, 216 Mich App 254, 257; 549 NW2d 39 (1996). Michigan law does not permit a person to submit to coercion and take the life of a third person; instead, the person being coerced should risk or sacrifice his or her own life rather than commit the murder. *People v Henderson*, 306 Mich App 1, 5; 854 NW2d 234 (2014). Therefore, the trial court did not err when it precluded defendant from presenting a duress defense.

Further, duress cannot negate the intent, malice, or premeditation elements of murder. *People v Reichard*, 323 Mich App 613, 615-616; 919 NW2d 417 (2018). Because voluntary manslaughter involves provocation that mitigates the malice element of murder, see *Mendoza*, 468 Mich at 540, and duress cannot mitigate the malice element of murder, see *Reichard*, 323 Mich App at 616, defendant could not rely on evidence that he feared for his life to support a manslaughter instruction. The trial court did not err when it refused to instruct the jury on manslaughter. See *Mendoza*, 468 Mich at 533.

Defendant similarly maintains that the trial court should have instructed the jury that it had to find that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime. See M Crim JI 16.1(6); M Crim JI 16.5(4). However, as noted in each version

-2-

of the criminal instructions that he cites, that portion of the instruction may be omitted if the defendant has not presented evidence to support a defense that amounts to justification or excuse, or has not presented evidence that would warrant an instruction on an appropriate necessarily included lesser offense. See, e.g., M Crim JI 16.1, n 4; M Crim JI 16.5, n 4. In this case, defendant presented no evidence to support any defense that would justify or excuse the killing. He also failed to present any evidence that the killing might have been mitigated to manslaughter. As such, the trial court properly omitted the last sentences from each instruction. See, e.g., *Henderson*, 306 Mich App at 8.

The trial court properly instructed the jury on the elements of first- and second-degree murder and did not err when it refused to instruct the jury on manslaughter as a necessarily included lesser offense of murder. The trial court's instructions adequately protected defendant's rights by fairly presenting the issues to be tried. See *Martin*, 271 Mich App at 337.

## III. EVIDENTIARY ERROR

Defendant next argues that the trial court erred when it admitted the statements that he gave to police officers and his testimony from Morton's preliminary examination into evidence. This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Id.* This Court reviews de novo the proper interpretation and application of the rules of evidence. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

Defendant maintains that his statement pursuant to the investigative subpoena was inadmissible under MRE 804(b)(1) and the decision in *People v Farquharson*, 274 Mich App 268; 731 NW2d 797 (2007). MRE 804 provides several exceptions to the general rule that hearsay statements are inadmissible at trial, and MRE 804(b)(1) specifically creates an exception for former testimony that meets certain criteria. In *Farquharson*, this Court had to determine whether the exception to the prohibition on the admission of hearsay applied to a deceased witness' testimony pursuant to an investigative subpoena. *Farquharson*, 274 Mich App at 272-279. MRE 804 and the decision in *Farquharson* are, however, inapplicable to this case because defendant's statements are by definition not hearsay. See MRE 801(d)(2). For that reason, the prosecution did not have to establish an exception to the prohibition on the admission of hearsay statements stated under MRE 802. Consequently, the trial court did not err when it allowed the admission of these statements.

Defendant also maintains that his preliminary examination testimony was inadmissible under MRE 410, which provides, in relevant part:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> (1) A plea of guilty which was later withdrawn;
>
> (2) A plea of nolo contendere, except that, to the extent that evidence of a guilty plea would be admissible, evidence of a plea of nolo contendere to a

-3-

criminal charge may be admitted in a civil proceeding to support a defense against a claim asserted by the person who entered the plea;

(3) Any statement made in the course of any proceedings under MCR 6.302 or comparable state or federal procedure regarding either of the foregoing pleas; or

(4) Any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

In this case, the prosecution did not seek the admission of evidence that defendant entered a plea of guilty or nolo contendere or the admission of any statement that he made at a proceeding held under MCR 6.302. Therefore, MRE 410(1) through (3) did not apply. The only question is whether the statements made to police officers and the preliminary examination testimony constituted statements that were "made in the course of plea discussions with an attorney for the prosecuting authority" that resulted in a plea that was later withdrawn. MRE 410(4).

A prosecuting attorney need not be present during the discussions in order for a statement to be made in the course of plea discussions "with an attorney for the prosecuting authority." *People v Smart*, 497 Mich 950; 857 NW2d 658 (2015). Moreover, a statement can be part of a plea discussion if the defendant had an actual subjective expectation to negotiate a plea at the time of the discussion and his or her expectation is reasonable under the totality of the circumstances. *People v Dunn*, 446 Mich 409, 415; 521 NW2d 255 (1994).

The trial court determined that defendant's statements were not made as part of plea negotiations because defendant had not yet been charged with a crime when he made them, and the statements that he should tell the truth and that it would be better for him if he cooperated did not transform the interrogation into a plea negotiation. Defendant admitted at the suppression hearing that he did not recall the prosecutor bringing up the words plea agreement or plea negotiation. He also stated that he raised the question of immunity and said the prosecutor responded that they needed to hear what defendant had to say first. Defendant conceded that he had not been charged with a crime. The assistant prosecuting attorney who participated in those interviews also testified that there were no plea discussions with defendant at that time.

On this record, defendant has not established that he spoke to the officers and prosecutor as part of plea negotiations. There was no evidence that he asked for a plea deal, was offered a plea deal, or that he otherwise negotiated with the officers or prosecuting attorney to secure a deal. Indeed, he initially denied any participation in the events at issue. The only evidence was that defendant had a vague hope that he might be given immunity and was told that it was in his interest to cooperate. On these facts, defendant did not have a reasonable expectation that the discussions were part of plea negotiations. *Dunn*, 446 Mich at 415. The trial court did not err when it concluded that defendant's statements made before he was charged with a crime were not statements made pursuant to plea negotiations within the meaning of MRE 410(4).

The trial court also correctly determined that MRE 410(4) did not apply to defendant's testimony at Morton's preliminary examination. The assistant prosecuting attorney testified at the suppression hearing that, by the time of Morton's preliminary examination, the prosecution had discussed a plea deal with defendant and agreed to let him plea to second-degree murder in exchange for his cooperation in the prosecution of Morton. And defendant testified at the hearing that he only testified at Morton's preliminary examination after he had agreed to a plea deal with the prosecution. As the trial court correctly stated in its order denying defendant's motion to suppress, defendant's testimony at the preliminary examination was not testimony made in the "course of plea negotiations," MRE 410(4); rather, it was testimony provided pursuant to a plea agreement. A defendant does not have a reasonable expectation to negotiate a plea while testifying under oath at a preliminary examination. See *Dunn*, 446 Mich at 415. Because defendant's testimony at the preliminary examination was not made as part of the plea discussions, MRE 410(4) did not preclude admission of his testimony at trial. Accordingly, the trial court did not abuse its discretion when it denied defendant's motion to suppress his statements and testimony. See *Yost*, 278 Mich App at 353.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that defense counsel provided him with ineffective assistance that led him to withdraw from his plea agreement. Because the trial court did not hold an evidentiary hearing on this claim of error, there are no factual findings to which this Court must defer, and this Court's review is for mistakes that are apparent on the record alone. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), remanded on other grounds 493 Mich 864 (2012). This Court reviews de novo whether defense counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and prejudiced his trial. *Id.* at 19-20.

Defendant maintains that defense counsel provided ineffective assistance by informing him that the statements that he made to the officers and his preliminary examination testimony could not be admitted against him. He similarly maintains that defense counsel improperly told him that duress was a defense to murder. More specifically, he faults defense counsel for not giving him proper advice on the consequences of his decision to withdraw his plea, such as informing him that "all his prior statements would likely be introduced during his trial and also that he would be unable to present duress as a defense during trial." He claims that he would not have withdrawn from his plea deal had he been properly advised.

"To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gioglio*, 296 Mich App at 22 (quotation marks and citation omitted).

Defendant entered into a written plea agreement with the prosecution in which he agreed to testify truthfully against Morton and any other codefendants or involved parties concerning the death of Byrd and the shooting that occurred at the projects. In exchange, the prosecution agreed to accept a plea to second-degree murder. Defendant agreed at his plea hearing that he had not been threatened or promised anything else in exchange for his plea. The trial court also

informed defendant at the plea hearing about the nature of the open murder charge. Specifically, it advised him that a jury could find him guilty of first-degree murder, second-degree murder, or manslaughter. Defendant stated that he understood. He further agreed that the trial court would, on the basis of his plea, be sentencing him for second-degree murder.

Defendant later sent the trial court correspondence wherein he stated that he was no longer willing to testify, which voided his plea deal. Defendant later wrote a lengthy letter to the trial court in which he stated that his trial counsel lied to him about the law to get him to take the plea deal. He claimed that he was told that a charge of open murder always resulted in life in prison even though that was not true. He claimed that he was also told to lie about Morton's involvement. He maintained that defense counsel had not provided him with advice about the law and reported that he had gained his knowledge from a cellmate. He further asked the trial court to suppress his previous statements.

The trial court discussed defendant's decision to withdraw from his plea agreement at a status conference. Defense counsel informed the trial court that defendant believed that he was coerced into making certain statements at the plea hearing and felt that he could not truthfully testify to those matters at Morton's trial. For that reason, he wanted to withdraw his plea but only on condition that his earlier statements would not be used against him. Defendant agreed that that was his position. The trial court warned defendant that it could not just make his earlier statements go away. At that point, defendant's mother interjected, and the trial court gave defense counsel an opportunity to consult with defendant and his mother. After consulting with defendant, defense counsel informed the court that she had spoken to defendant and his mother about "one thing that we didn't talk about as far as duress being a defense to his intent when he went down that alley . . . ." She explained that defendant was under the "understanding that duress was a defense." She stated that "[w]e have now cleared that up" and defendant no longer wanted to withdraw his plea. Defendant agreed that, given the state of the law, he had to take responsibility. The prosecutor responded that he was no longer interested in the plea deal given that defendant was stating that he would not testify against his codefendants. The trial court determined that the defense should file a written motion to withdraw the plea if he wished to proceed.

Defense counsel filed a written motion to withdraw defendant's plea on June 23, 2017. In that motion, counsel wrote that defendant believed he had been coerced into saying things that implicated a conspiracy to commit first-degree murder. She further wrote that he would not be able to testify to those matters at Morton's trial because the statements were not the truth. At a hearing held later that month, the prosecutor did not object, and the trial court indicated that it would grant the motion. The trial court entered an order granting the motion in July 2017.

There was no indication in defendant's correspondence with the trial court that he was induced into withdrawing his plea as a result of advice from his lawyer that his statements could not be used against him in the event that he withdrew his plea, or that he could raise a duress defense at trial. Indeed, defendant suggested in his letters that he was acting on his own and without the advice of counsel. The fact that he specifically asked to have his previous statements suppressed also belied his position. Subsequent events strongly suggested that defendant himself knew that his statements might be used against him and that it was not defense counsel who misled him into thinking that duress was a defense to the charge of murder. Notably, the

statements from the hearing held in June 2017, show that defense counsel was aware that duress was not a defense to murder and that she corrected defendant's misunderstanding once she became aware of it.

Accordingly, on this record, defendant has not established the factual predicate for his claim—he has not shown that defense counsel improperly advised him about the admissibility of his statements or improperly told him that duress was a defense before his decision to contact the trial court and try and withdraw from his plea agreement. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (stating that the defendant bears the burden to establish the factual predicate of his claim that he did not receive effective assistance). Because defendant has not shown that defense counsel provided advice that fell below an objective standard of reasonableness under prevailing professional norms, his claim of ineffective assistance of counsel fails. See *Gioglio*, 296 Mich App at 22.

The record also shows that defendant vacillated about whether to withdraw his deal after being told that his statements could not be made to go away and that duress was not a defense. Despite his vacillation, defense counsel filed a written motion to withdraw defendant's plea. It must be understood on this record that defense counsel filed the motion because defendant insisted on withdrawing his plea even after being properly advised about the ramifications at the hearing. The motion was carefully worded to establish grounds to withdraw, but notably the defense no longer conditioned the motion on the suppression of defendant's statements. Hence, the record showed that defense counsel filed the motion to withdraw on defendant's behalf after defendant repeatedly expressed his intent not to testify against Morton, and after he had been properly advised that his statements might be used against him and that duress was not a defense to murder. For that reason, even if this Court were to conclude that defense counsel improperly advised defendant about the admissibility of his statements and the availability of the duress defense—a supposition that is highly unlikely—defendant has not shown that, but for the improper advice, he would not have withdrawn his plea. The record showed that any misconceptions that he may have had about the state of the law had been cleared up before defense counsel filed the written motion to withdraw on his behalf. Moreover, defendant continued to assert that he could not comply with his plea agreement because to do so he would have to lie about the underlying events. Consequently, defendant cannot show that, but for defense counsel's allegedly improper advice, he would not have withdrawn from his plea agreement—that is, he cannot show that the outcome would have been different. See *id*. Defendant has not demonstrated any errors that warrant a new trial.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ James Robert Redford