# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARY ELAINE WHITE,

        Defendant-Appellant.

UNPUBLISHED
November 29, 2016

No.   327418
Wayne Circuit Court
LC No.   14-008075-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT EARL WHITE,

        Defendant-Appellant.

No.   327419
Wayne Circuit Court
LC No.   14-008075-02-FC

---

Before:  JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

In Docket No. 327418, defendant Mary Elaine White (MEW) appeals as of right her jury trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b.  The trial court sentenced MEW to 23 months to 10 years' imprisonment for the AWIGBH conviction, to be served consecutively to five years' imprisonment for the felony-firearm conviction.  We affirm MEW's convictions, but remand for a *Crosby*[1] proceeding under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), relative to her sentences and for the ministerial task of correcting errors in the judgment of sentence.

In Docket No. 327419, defendant Robert Earl White (REW) appeals as of right his jury trial convictions of assault with intent to commit murder (AWIM), MCL 750.83, felony-firearm,

---

[1] This is a reference to *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

-1-

and felon in possession of a firearm, MCL 750.224f. The trial court sentenced REW as a second habitual offender, MCL 769.10, to concurrent sentences of 15 to 25 years' imprisonment for the AWIM conviction and two to five years' imprisonment for the felon-in-possession conviction, to be served consecutively to a two-year term of imprisonment for the felony-firearm conviction. We affirm.

The charges and convictions in this case stem from the shooting of MEW's boyfriend. There was evidence that MEW's boyfriend hit MEW in the face after an argument outside their house, that MEW then left the scene, that MEW returned to the house within about five to ten minutes, that REW, who is MEW's brother, also arrived at the house, that the boyfriend locked himself inside the house and stood by the door as both defendants stood outside the door verbalizing their intent to harm the boyfriend, that the boyfriend started to call 911, and that, with MEW's boisterous approval, REW then fired numerous gunshots through the door, striking the boyfriend.

In Docket No. 327418, MEW first argues that there was insufficient evidence to support her felony-firearm conviction, which was based on an aiding and abetting theory. We disagree. We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

A defendant may be convicted of felony-firearm under an aiding and abetting theory. *People v Moore*, 470 Mich 56; 679 NW2d 41 (2004). In *Moore*, our Supreme Court held that "the proper standard for establishing felony-firearm under an aiding and abetting theory is whether the defendant's words or deeds 'procure[d], counsel[ed], aid[ed], or abet[ted]' another to carry or have in his possession a firearm during the commission or attempted commission of a felony-firearm offense." *Id*. at 58-59 (alterations in original). "All that is required to prove aiding and abetting felony-firearm is that the defendant aided and abetted another in carrying or having in his possession a firearm while that other commits or attempts to commit a felony." *Id*. at 68. In *Moore*, this Court explained:

> The prosecutors must do more than demonstrate that defendants aided the commission or attempted commission of the underlying crimes (here murder and robbery). Rather, the prosecutors must demonstrate that defendants specifically aided the commission of felony-firearm. Establishing that a defendant has aided

and abetted a felony-firearm offense requires proof that a violation of the felony-firearm statute was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation, and that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime. It must be determined on a case-by-case basis whether the defendant performed acts or gave encouragement that assisted in the carrying or possession of a firearm during the commission of a felony. [*Id.* at 70-71 (citations and quotation marks omitted).]

The *Moore* Court held:

The defendant in each case aided or abetted felony-firearm by actively urging, inciting, encouraging, or motivating the principal to use the weapon that was in the principal's possession. Implicit in the *use* of a firearm is the *possession* of that firearm. Thus, when a defendant specifically encourages another possessing a gun during the commission of a felony to use that gun, he aids and abets the carrying or possessing of that gun just as surely as if he aided or abetted the principal in obtaining or retaining the gun. [*Id.* at 71.]

Here, REW arrived at the house with a gun, and MEW arrived shortly thereafter in her own vehicle. There was evidence that both defendants yelled for the boyfriend to come outside. An eyewitness testified that he saw a woman "hyping it up," and the boyfriend testified that MEW yelled, "F--- that. Get him. Kill him," or "Get that mother------. Kill him." A police officer who responded to the scene testified that MEW's boyfriend asserted that MEW had said, "Shoot this mother------." And then several shots were fired through the door, hitting the boyfriend. Viewing this evidence in a light most favorable to the prosecution, the jury could find that MEW encouraged REW's use of the weapon by directing him to shoot or kill the boyfriend. *Moore*, 470 Mich at 71. Thus, MEW aided and abetted REW's possession of the firearm by specifically encouraging him to use the gun in his possession. *Id.* MEW's arguments to the contrary are unavailing, and reversal is unwarranted.

Next, MEW argues that defense counsel was ineffective for failing to object to an allegedly defective verdict form and accompanying jury instructions. We disagree. Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court, addressing the basic principles governing a claim of ineffective assistance of counsel, observed:

To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient.

-3-

This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

MEW's verdict form appeared as follows:

THIRD CIRCUIT COURT OF MICHIGAN FOR THE COUNTY OF WAYNE
CRIMINAL DIVISION

PEOPLE OF THE STATE OF MICHIGAN,
Plaintiff

-v-                                                    Honorable Margaret M. Van Houten

MARY ELAINE WHITE,                                     3CC#: 14-008075-01-FC
Defendant

**VERDICT FORM**

You may return only one verdict on each these charges. Mark only **one** box for each count.

**Count 2: Assault with Intent to Murder**
- ☐ Not Guilty
- ☐ Guilty of Count 2: Assault with Intent to Murder
- ☑ Guilty of Count 3: Assault with Intent to do Great Bodily Harm Less than Murder

**Count 4: Weapons – Felony Firearm**
- ☐ Not Guilty
- ☑ Guilty of Weapons – Felony Firearm

MEW maintains that this verdict form was confusing, appearing to foreclose the jury's ability to acquit MEW of both AWIM and AWIGBH. Although a bit more clarity would have been helpful, we find that the verdict form was not defective, as it gave the jury the opportunity to return a general verdict of not guilty with respect to the assault against MEW's boyfriend,

encompassing a prospective acquittal on both AWIM and AWIGBH. See and compare *People v Wade*, 283 Mich App 462, 464-468; 771 NW2d 447 (2009). We cannot envision that the jury was of the belief that it was not permitted to render a general not-guilty verdict relative to the assault. Indeed, to accept MEW's argument, we would have to find that the jury, after determining that MEW was not guilty of AWIM, was under the impression that it was absolutely compelled to render a guilty verdict on AWIGBH, which is simply not logical. In its instructions, the trial court directed the jurors that they could find defendant not guilty, guilty of AWIM, or guilty of AWIGBH. Assuming for the sake of argument that the issue is a closer call and that perhaps *Wade* dictates a different conclusion, we cannot find that defense counsel's failure to challenge the verdict form and instructions fell below an objective standard of reasonableness. And given the strong evidence of MEW's participation in the crime and her guilt, the requisite prejudice has not been shown.

MEW next argues that she is entitled to a *Crosby* remand under *Lockridge* because her sentencing guidelines were calculated on the basis of judicially-found facts, which were used to mandatorily increase the floor of the guidelines minimum sentence range in violation of her right to a jury trial. We agree. MEW did not raise this issue below; therefore, "our review is for plain error affecting substantial rights." *Lockridge*, 498 Mich at 392. In *Lockridge*, our Supreme Court held:

> Because Michigan's sentencing guidelines scheme allows judges to find by a preponderance of the evidence facts that are then used to compel an increase in the mandatory minimum punishment a defendant receives, it violates the Sixth Amendment to the United States Constitution . . . . We therefore reverse the judgment . . . . To remedy the constitutional flaw in the guidelines, we hold that they are advisory only.

> To make a threshold showing of plain error that could require resentencing, a defendant must demonstrate that his or her [offense variable] OV level was calculated using facts beyond those found by the jury or admitted by the defendant and that a corresponding reduction in the defendant's OV score to account for the error would change the applicable guidelines minimum sentence range. If a defendant makes that threshold showing and was not sentenced to an upward departure sentence, he or she is entitled to a remand [to] the trial court for that court to determine whether plain error occurred, i.e., whether the court would have imposed the same sentence absent the unconstitutional constraint on its discretion.[2] If the trial court determines that it would not have imposed the same sentence but for the constraint, it must resentence the defendant. [*Lockridge*, 498 Mich at 399.]

---

[2] The Court referred to such remands as "*Crosby* remands" after the procedures outlined in *Crosby*, 397 F3d 103. *Lockridge*, 498 Mich at 395-399. "*Crosby* remands are warranted only in cases involving sentences imposed on or before July 29, 2015 . . . ." *Id.* at 397. MEW was sentenced in April 2015. The specific procedures applicable upon a *Crosby* remand are set forth in *Lockridge*. *Id.* at 398.

Here, 25 points were assessed by the trial court for OV 3, which is the appropriate score when a "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). This was not a fact necessarily found by the jury in rendering its verdict, as AWIGBH does not require actual proof of an injury, nor was it a fact admitted by MEW. It is unnecessary for us to examine any other OVs, given that the reduction of 25 points for OV 3 alone lowers the minimum guidelines range, MCL 777.65, thereby mandating a *Crosby* remand under *Lockridge*.

Finally, MEW argues that the judgment of sentence inaccurately states that she was found guilty of AWIM instead of AWIGBH. While the judgment of sentence provides the citation for AWIGBH, MCL 750.84, it describes the offense as being AWIM, and this error is to be corrected on remand. We further note that the judgment of sentence indicates that MEW was sentenced as a second-habitual offender under MCL 769.10. This is also incorrect. She was convicted of and sentenced for felony-firearm, second offense, MCL 750.227b(1). We direct that this error also be corrected on remand.

In Docket No. 327419, REW contends that his convictions must be reversed because there was insufficient evidence of his identity as the perpetrator and of an intent to kill. We disagree. "[I]dentity is an element of every offense," *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), and an intent to kill is an essential element of AWIM, *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). REW maintains that MEW's boyfriend was the only person who provided identification testimony and that his testimony was not credible. REW claims that the boyfriend could not have known who the shooter was because he was standing behind the door of the home when the shots rang out. The boyfriend, however, testified that he saw REW exit his vehicle with a gun in his hand and that he observed REW shoot out the top window. REW is also incorrect that the boyfriend was the only witness who provided identification testimony. There was an eyewitness who described the shooter's vehicle as a red truck with a white door, and REW was arrested in a red Suburban with a white door. Another eyewitness saw the shooter get into an SUV or van. Moreover, contrary to REW's assertion, this witness did not describe the shooter as being short. Rather, she testified that she referred to the shooter as the "short guy" and the other man on the porch as the "tall guy" because "one was basically shorter than the other one." Thus, her testimony did not actually describe the height of the shooter. And the other eyewitness described the shooter as tall and slender, fitting REW's description. Finally, although REW claims that there were inconsistencies between the boyfriend's testimony and his earlier statements and testimony, "[t]he credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v Jackson*, 292 Mich App 583, 587-588; 808 NW2d 541 (2011) (citation and quotation marks omitted). Thus, there was sufficient evidence identifying REW as the shooter.

We also reject REW's argument that there was insufficient evidence showing an intent to kill. REW makes this claim on the basis that there was a lack of evidence indicating that he knew that the boyfriend was directly behind the door when he fired his weapon. The boyfriend testified that MEW was trying to unlock the door and the boyfriend relocked it, and he also told defendants that he was calling the police. Given his relocking of the door and his statement to defendants, the jury could reasonably have found that defendants were aware that the boyfriend was within close proximity to the door. And REW's intent to kill can be inferred by his use of a deadly weapon, *Henderson*, 306 Mich App at 11, which he fired multiple times into an occupied

-6-

home. REW argues that because there was no evidence of "bad blood" between himself and the boyfriend, there was no evidence of motive that might supply a basis to infer an intent to kill. "Minimal circumstantial evidence is sufficient to show an intent to kill, and that evidence can include a motive to kill, along with flight and lying, which may reflect a consciousness of guilt." *Id.* While we note that motive is not an element of the crime that needed to be established, the boyfriend's earlier assault of REW's sibling, MEW, provided motivation for him to kill the boyfriend. REW's flight after the shooting also reflected a consciousness of guilt. Accordingly, there was sufficient evidence of REW's intent to kill.

Finally, REW presents a *Lockridge* argument and requests a *Crosby* remand. REW filed a motion in the trial court for resentencing under *Lockridge* after its release, and the court conducted a hearing on the motion, entertaining the parties' briefs and arguments. Although the trial court did not articulate its decision in the precise terms set forth in *Lockridge*, the court made absolutely clear that the sentences imposed on REW would not have been any different under the principles announced in *Lockridge.* Therefore, REW was effectively afforded a *Crosby* remand, and we see no reason to return the matter back to the trial court for further review.

In Docket No. 327418, we affirm MEW's convictions, but remand for a *Crosby* proceeding under *Lockridge* and for the ministerial task of correcting errors in the judgment of sentence, as identified above. In Docket No. 327419, we affirm REW's convictions and sentences. We do not retain jurisdiction.


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan

-7-