# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MELODY HOWARD,

       Defendant-Appellant.

UNPUBLISHED
March 30, 2017

No. 329844
Wayne Circuit Court
LC No. 15-003819-01-FH

Before: MARKEY, P.J., and WILDER and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right her bench trial conviction of identity theft, MCL 445.65. On appeal, defendant argues that the trial court erred in admitting a contract, the document which the prosecution argued confirmed that she stole the identity of defendant's brother-in-law. Defendant also argues that her trial counsel was ineffective and that, in any event, there was insufficient evidence that she was the person who stole her brother-in-law's identity. As explained below, defendant's arguments are without merit, and we affirm her conviction.

Defendant's conviction arises from a contract for alarm-system services on a home in Detroit. At the time, defendant was living rent-free at the Detroit home with her husband, Walter Jackson. Walter's brother, Michael Jackson, owned the Detroit home. On November 26, 2014, Michael received a telephone call from a debt-collection agency, informing him that he owed $1,400 for alarm-system services on the Detroit home. Michael confronted defendant about the alarm system, and, according to Michael, defendant admitted to him that she had the system installed because her stepsons would show up at the house unannounced and uninvited. The collection agency e-mailed a copy of the alarm system contract, dated July 18, 2013, to Michael's daughter, April Jackson.

During defendant's bench trial, the prosecution relied principally on the testimony of Michael and April as well as a copy of the contract. Michael testified that the signatures on the contract were not his own. Defendant testified in her own defense and admitted that she had the alarm system installed because of her stepsons. She claimed, however, that Walter signed the paperwork for the alarm system in 2011, a few months before he suffered a series of strokes that left him completely disabled. At the conclusion of the trial, the trial court found defendant guilty. Defendant subsequently moved for a new trial, which the trial court denied.

-1-

On appeal, defendant argues that the trial court erred when it denied her motion for a new trial. First, she claims the contract should not have been admitted at trial because it constituted inadmissible hearsay and was not properly authenticated. Second, she claims she was denied the effective assistance of counsel. Finally, she argues that there was insufficient evidence to support her conviction, regardless of any errors made below. As explained infra, we find that her claims are without merit.

## I. ADMISSION OF THE CONTRACT

A trial court "may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." MCR 6.431(B). "We review for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial." *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). "An abuse of discretion occurs only when the trial court chooses an outcome falling outside the principled range of outcomes." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008) (internal quotation notation and citation omitted).

Defendant first argues that the trial court abused its discretion when it improperly admitted the alarm-system contract, purportedly forged by defendant, into evidence. We review the trial court's decision to admit evidence for an abuse of discretion, but we review de novo whether a rule of evidence precludes admissibility as a matter of law. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).

At issue is a written contract for the installation of an alarm system with three years of monitoring services. The contract contained two signatures in Michael's name—one for the equipment installation and one for the monitoring service—and recited several pieces of Michael's personal information, including his employment information and his social-security number, although this number was inaccurately reported in several locations. The contract also named defendant and her two sisters on the "subscriber contact list" and listed a credit card not belonging to Michael under the "customer authorization" section.

Michael testified that neither signature was his and that he first learned of the contract when a debt-collection agency contacted him in 2014 to pay the deficiency on the account. Michael and his daughter, April, both testified that April contacted the debt-collection agency and the agency emailed April a copy of the alarm-system contract. The trial court admitted this contract into evidence, over defendant's hearsay and authentication objections, after both Michael and April affirmed that the contract presented at trial was the contract the agency emailed to April. Defendant raised the same objections in her motion for a new trial, which the trial court denied, and now on appeal.

*Bench Trial.* We note at the outset that this was a bench trial, not a jury trial. Even assuming for argument's sake that the contract was hearsay and not authenticated, when a trial is held before the bench rather than a jury, "we can assume that its verdict rested upon evidence properly offered and not upon the inadmissible [evidence]." *People v Payne*, 37 Mich App 442, 445; 194 NW2d 906 (1971); see also *People v Jones*, 168 Mich App 191, 194; 423 NW2d 614 (1998) ("A judge, unlike a juror, possesses an understanding of the law which allows him to ignore such errors and to decide a case based solely on the evidence properly admitted at trial.").

A review of the record confirms that the trial court did not use the contract for an improper purpose.

*The Contract Was Not Hearsay.* With this said, the contract was not hearsay. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "If, however, the proponent of the evidence offers the statement for a purpose other than to prove the truth of the matter asserted, then the statement, by definition, is not hearsay." *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013). Hearsay is generally inadmissible except as provided by the rules of evidence. MRE 802.

Before the trial court, and on appeal, defendant appears to argue that the contract was inadmissible because the contract did not qualify under MRE 803(6) as a record of "regularly conducted business activity" excepted from the hearsay ban. Defendant's argument, however, puts the cart before the horse by failing to acknowledge that the trial court properly determined that the contract was not hearsay in the first instance.

A fundamental tenet of the hearsay prohibition is that, for a contract to fall within that prohibition, the proponent of that contract must offer the document to prove the terms asserted therein. If, instead, the proponent offers the contract as evidence of a person's conduct—whether legal or illegal—the hearsay prohibition does not come into play. See 2 McCormick, Evidence (7th Ed), § 249, p 189. In this case, the document offered by the prosecution purports to be a contract between Michael and the alarm company, entered in 2013. If the prosecution had offered the document to prove that Michael and the alarm company entered into a valid contract in 2013, then the document would likely have been hearsay. The prosecution, however, did not offer the document for that purpose, but instead offered the document as evidence that defendant misappropriated Michael's identity in 2013 in an attempt to perpetrate a fraud upon the alarm company. Thus, the prosecution offered the document to prove defendant's unlawful conduct, rather than to prove the truth of the contents of that document. We conclude that the trial court properly determined that the document, as offered, was not hearsay.

*The Contract Was Sufficiently Authenticated.* Defendant also argues that the prosecution did not properly authenticate the contract. Before the trial court may admit a document as evidence, the proponent of that document must authenticate it "by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). A document may be authenticated through testimony of a witness with knowledge "that a matter is what it is claimed to be." MRE 901(b)(1).

The prosecution called two witnesses, Michael and April, who explained that a debt-collection agency contacted Michael and informed him that he owed over $1,400 for alarm-monitoring services. Both witnesses testified that the debt-collection agency e-mailed the underlying contract to April, who then printed a copy of the contract. Both April and Michael confirmed that the copy of the contract introduced at trial was the same contract that she received from the debt-collection agency. For her part, defendant admitted at trial that she provided her contact information and her sisters' contact information for use on the contract, and this information appears on the contract offered at trial. Defendant also admitted that, when she

talked with a representative from the alarm company after Michael confronted her, the company indicated that it had turned the matter over to the debt-collection agency.

Although testimony of a keeper of records of the collection agency or the alarm company may have provided a shorter route of authentication, the lack of such testimony need not be fatal. "It is axiomatic that proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt. It need only meet the minimum requirements for admissibility." *People v McDade*, 301 Mich App 343, 353; 836 NW2d 266 (internal quotation marks and citation omitted). Here, as recounted above, the record developed at trial was sufficient to support a finding that the contract was indeed the alarm contract that the prosecution claimed it to be. Accordingly, we do not find that the trial court abused its discretion by admitting the contract into evidence.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that the trial court abused its discretion when it denied defendant's motion for a new trial because she was constitutionally deprived of the effective assistance of counsel. In the alternative, defendant argues that, at a minimum, she should have been afforded an evidentiary hearing and the funds to retain a handwriting expert. We disagree.

The issue of ineffective assistance of counsel presents "a mixed question of fact and constitutional law." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). When a defendant's claim of ineffective assistance of counsel is based on facts not on the record, she may ask for a hearing to create this record for appeal. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). A trial court's decision to deny an evidentiary hearing is reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). A trial court's decision to deny a request for funds to obtain an expert witness is also reviewed for an abuse of discretion. *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006).

Under the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence."[1] The right to counsel plays a crucial role in the Sixth Amendment's guarantee of a fair trial by ensuring that the defendant has access to the "skill and knowledge" necessary to respond to the charges against him or her. *Strickland v Washington*, 466 US 668, 685; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The right to counsel also encompasses the right to the effective assistance of counsel." *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). See also *Strickland*, 466 US at 686.

---

[1] See also Const 1963, art 1, § 20. Our Constitution's guarantee of the right to counsel is coextensive with that guaranteed by the federal Sixth Amendment. *People v Pickens*, 446 Mich 298, 302; 521 NW2d 797 (1994).

An appellate court is required to reverse a defendant's conviction when defense "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 US at 687. A defendant requesting reversal of an otherwise valid conviction bears the burden of proving "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

To prove the first prong, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Counsel is not ineffective for failing to make a futile motion. *Sabin*, 242 Mich App at 660. A defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012).

On appeal, defendant specifically claims that her trial counsel was ineffective for failing to present a witness who would have testified that he was present when defendant's husband signed the contract in 2011 and for failing to engage a handwriting expert to analyze the signature on the contract. We disagree with both claims.

*The Proposed Witness Would Not Have Changed the Outcome.* With regard to the proposed witness, during her motion for reconsideration, defendant provided the trial court with an affidavit from a proposed witness attesting that he was present when defendant's husband signed the contract—purportedly in 2011 just before the husband suffered his debilitating series of strokes. The trial court judge noted during the hearing that this was a bench trial, meaning that the judge (not a jury) was the finder-of-fact. In denying the motion, the trial court judge stated that, if this witness had been presented to him and testified in accordance with the affidavit, the judge would have still found defendant guilty, given the other evidence presented at trial. On this basis, the trial court judge denied the motion for reconsideration.

The record supports the trial court judge's denial. As the finder-of-fact, the trial court described Michael as being very credible, and Michael testified that defendant admitted to him that she had the service installed to prevent her stepchildren from entering the home. In contrast, the trial court placed little credibility in defendant's version of events and explained that the proposed witness' testimony, as described in the affidavit, would not have altered the outcome. Credibility determinations are for the fact-finder, not an appellate court. See *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

Moreover, nowhere in the affidavit does the proposed witness provide any plausible explanation for why the contract indicates that the signature was made in 2013—some two years after defendant's husband apparently became physically incapable of signing his name to a contract. Importantly, defendant offered no plausible explanation for this discrepancy at trial,

nor has she offered one on appeal. In fact, defendant admitted at trial that she personally made several payments for the alarm service. If any of those alleged payments were made prior to July 2013, defendant herself would have been in the best position to offer evidence that such service began in 2011 in order to support an inference that the date on the contract was incorrect. Given this, as well as the other evidence offered at trial, we conclude that defendant cannot show prejudice from her counsel's failure to offer this witness at trial.

*No Prejudice Shown from Lack of Handwriting Expert.* Regarding the handwriting expert, defendant's only claim of prejudice is a conclusory statement that "but for trial counsel's errors [defendant] would not have been found guilty of the crime charged." On appeal, defendant has provided this Court with no argument—let alone an argument supported by any factual assertion—from which this Court may conclude that any potential error by her trial counsel prejudiced her defense. In fact, defendant does not even argue that the handwriting expert would determine that the handwriting on the contract did not match her handwriting. Defendant merely asserts on appeal that a handwriting expert "could have potentially provided exculpatory testimony after examining the document purportedly signed by [defendant]."

"An appellant may not merely announce [her] position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714, 724 (2009) (internal quotation marks and citation omitted). "Error warranting reversal does not occur where a defendant fails to articulate how [she] was harmed." *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). Because defendant fails to provide this Court with any support for her argument that her trial counsel's failure to engage a handwriting expert prejudiced her defense, we deny her claim of ineffective assistance of counsel.

*Request for* Ginther *Hearing.* Defendant also argues that, at the very least, the trial court should have afforded defendant an evidentiary hearing and granted her request for funds to obtain a handwriting expert. We disagree. Because defendant has not provided this Court, or the trial court, with any evidence to suggest that a *Ginther* hearing would aid the development of defendant's claim of ineffective assistance, we conclude that the trial court did not abuse its discretion by denying her request for an evidentiary hearing. Similarly, because defendant has not provided this Court, or the trial court, with any indication that a handwriting expert would likely benefit her defense, we conclude that the trial court did not abuse its discretion in denying defendant's motion for funding to obtain that expert. *Carnicom*, 272 Mich App at 617.

## III. SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues that the evidence presented at the bench trial was insufficient to support her identity theft conviction. This Court reviews de novo a defendant's challenge to the sufficiency of evidence supporting her conviction. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. *Id*. at 9. This Court will not interfere with the trier of fact's determinations regarding the weight of the evidence and the credibility of the witnesses. *Unger*, 278 Mich App at 222.

Relevant to this case, the elements of identity theft under MCL 445.65 are as follows: (1) using the identifying information of another person, (2) to obtain goods or services, (3) with the intent to defraud or violate the law. MCL 445.65(1)(a)(*i*). Circumstantial evidence and reasonable inferences arising from the evidence can sufficiently prove the elements of a crime, including the defendant's state of mind, knowledge, or intent. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

The record contained evidence showing that defendant and her husband both had bad credit. Defendant admits that the alarm company provided services to the couple, but claims that her husband engaged these services in 2011. Properly admitted at trial, the contract for these services indicates, however, that it was entered in 2013. This contract purports to be signed by Michael, although he testified that he never signed it. The contract further contains errors in Michael's personal information that he was unlikely to have made himself, for instance, misstating his social-security number. Defendant's husband suffered a series of debilitating strokes in 2011, leaving defendant as the only adult in the home competent to engage these services in 2013. Additionally, Michael, who was found to be a credible witness, testified that defendant admitted to him that she had the service installed because her step-children kept coming by unannounced and uninvited. Viewing the evidence in a light most favorable to the prosecution, the evidence, although circumstantial, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant committed identity theft.

Affirmed.


/s/ Jane E. Markey
/s/ Kurtis T. Wilder
/s/ Brock A. Swartzle