*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LAREN RILEY,

        Defendant-Appellant.

UNPUBLISHED
April 23, 2019

No. 339564
Wayne Circuit Court
LC No. 16-010511-01-FC

Before: LETICA, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of assault with intent to do great bodily harm less than murder, MCL 750.84, first-degree home invasion, MCL 750.110a(2), three counts of armed robbery, MCL 750.529, carrying a weapon with unlawful intent, MCL 750.226, and six counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 6 to 10 years' imprisonment for assault with intent to do great bodily harm less than murder, 12 to 20 years' imprisonment for first-degree home invasion, 12 to 20 years' imprisonment for each count of armed robbery, 42 days in jail for carrying a weapon with unlawful intent, and two years' imprisonment for each count of felony-firearm. We affirm.

## I. BACKGROUND

This case arises from a robbery that occurred on March 31, 2016. On that date, Anthony Trice and his girlfriend, Megan Willis, were sitting in their car when Trice heard a "bump" on the window of his car. When he looked up, he saw a handgun pointed at him through the window. The gunman demanded money, so Willis emptied the contents of her purse onto the seat of the car. The man told Trice to get out of the car, and then fired the gun through the window, hitting Trice in his left forearm and abdomen. Trice was pulled from the car, and the gun was held to his head. The shooter was described as a "dark-skinned male" with a thin beard and wearing gray sweats, whom Trice later identified as defendant. In addition to the "dark-skinned male," there was also a "light-skinned male with braids," a beard, and navy-blue sweats

standing nearby.  Willis testified that it was this second man that had told her to get out of the car.

Trice managed to wrestle the gun away from the man who held it to his head and ran across the street, where he proceeded to "exchange shots" with one of the two men.  During this shootout, the two men ordered Willis to walk to their house and used the car keys to gain entrance.  Defendant entered the house first, whereupon he took a cell phone from Trice's son, Marcel Clark, and demanded to know where "the money" was.  Willis showed him a mason jar full of change, as well as an orange bucket, both of which defendant took.  However, this seemed to frustrate defendant, who at one point called down to the man with the light complexion to "come kill this bitch."  When defendant heard gunshots outside, he ran downstairs and out of the house.  Once Trice had emptied the magazine of his weapon in the shootout, the two men fled, at least one in a black minivan.  Willis then called the police and Trice went to the hospital to treat his gunshot wounds.

In the ensuing investigation and trial, both Willis and Trice positively identified defendant as the man who had robbed them in a series of photo arrays.  Additionally, forensic technicians investigated the scene and located a trail of blood on the driveway, leading to the backyard of the house, as well as blood in the hallways of the house.  The forensic technicians also located several bullet cartridges and a ski mask located about 10 feet away from Trice's car.  Several stipulations were also made as to firearms expert testimony, which stated that the seven cartridges found in front of the house were shot from the same handgun.  More stipulations were made as to laboratory reports, which stated that DNA found on the ski mask almost certainly came from defendant.

Defendant argued that he could not have committed the crime because he was at a friend's house on the night in question.  He offered several witnesses to that effect, including Leo Parker (defendant's brother), Steven Maddox, Takella Patterson (defendant's girlfriend), and Kenneth Dorsey.  Additionally, defendant argued that his brother must have lost the ski mask near Trice's house when his dogs got into a fight and he had to intercede.  Finally, defendant argued, with the support of the same witnesses, that he had always had a full beard and admitted pictures of himself 11 days after the robbery showing such.  The court did not find these arguments persuasive, and found the defendant guilty of great bodily harm less than murder, first-degree home invasion, three counts of armed robbery, carrying a weapon with unlawful intent, and six counts of felony-firearm.  The court put great weight on the photographic array evidence, as well as the fact that it did not find defendant's witnesses or explanations credible, going so far as to suggest that defendant's witnesses had fabricated defendant's alibi.  This appeal followed.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues in his principal brief that he was denied the effective assistance of counsel because defense counsel failed to object to the admission of the ski mask, test the ski mask for Leo Parker's DNA, challenge the witnesses' identifications of defendant that he claims

were based on an unduly suggestive photographic lineup, and introduce additional photographs that depicted defendant's physical appearance on or around March 31, 2016. Defendant additionally argues in his Standard 4[1] brief that defense counsel's failure to request the appointment of an eyewitness identification expert and an expert in DNA analysis deprived him of the effective assistance of counsel. We disagree that counsel was ineffective.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). To establish a claim for ineffective assistance of counsel, a defendant must demonstrate that defense counsel's performance was deficient in that it fell below an objective standard of professional reasonableness, and that there is a reasonable probability that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different. *People v Grant*, 470 Mich 477, 485-486; 684 NW2d 686 (2004) (opinion by KELLY, J.). There is a strong presumption that defense counsel's decisions constitute sound trial strategy. *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017). Counsel is presumed to be effective, and the defendant bears a heavy burden to demonstrate otherwise. *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004).

## A. SKI MASK

Defendant argues that defense counsel was ineffective for failing to object to the admission of the ski mask, which he claims was not relevant evidence. MRE 401 defines "relevant evidence" as evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." The ski mask bore defendant's DNA and was found approximately 10 feet away from the car of one of the victims, which suggests that defendant was one of the men who participated in the robbery. The ski mask was therefore clearly relevant, and, pursuant to MRE 402, admissible. Any objection defense counsel could have raised to the admissibility of the ski mask on the basis of relevance would have been meritless. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## B. DNA TESTING

Defendant next argues that defense counsel's failure to test the ski mask for Parker's DNA deprived him of the effective assistance of counsel.

Trial counsel's failure to make an adequate investigation constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense, *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012), or "undermines confidence in the trial's outcome," *Grant*, 470 Mich at 493 (opinion by KELLY, J.). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation omitted). Furthermore, we will not substitute our judgment for that of defense

---

[1] Supreme Court Administrative Order 2004-6, Standard 4.

counsel concerning matters of trial strategy, nor will we assess counsel's performance with the benefit of hindsight. *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *Grant*, 470 Mich at 486 (opinion by KELLY, J.).

Defendant's theory was that defendant had given the ski mask to Parker, who subsequently lost the ski mask while walking dogs near Trice's house, thus providing an alternative explanation for the presence of defendant's DNA at the scene of the crime. Because counsel did in fact introduce testimony that, if believed by the jury, would have established defendant's theory, testing the mask for Parker's DNA would have revealed, at the most, cumulative evidence. Defense counsel's failure to test the ski mask for Parker's DNA did not undermine confidence in the outcome of the trial and did not deprive defendant of a substantial defense. Furthermore, defense counsel could very reasonably have been concerned that testing the ski mask would *not* have revealed any DNA from Parker, thereby making the ski mask even more incriminating. Consequently, defense counsel had a sound strategic reason for relying on testimony alone to present defendant's theory, and defendant has not shown that decision to be anything but a reasonable professional judgment.

## C.  PHOTOGRAPHIC ARRAYS

Defendant argues that defense counsel was ineffective by failing to challenge the lineup procedures for the photographic arrays as unduly suggestive. Defense counsel in fact *did* attempt to suppress the witnesses' identifications before trial. Defense counsel specifically argued to the trial court that the photographic arrays were unduly suggestive because defendant "was substantially smaller in size" compared to the other individuals in the array, which gave rise to a "substantial likelihood of irreparable misidentification." Defense counsel also argued that there was a seven-month gap between the crime and the date of the identifications, and that the witnesses' descriptions of the perpetrator did not match defendant's appearance. The trial court denied defendant's motion, finding that a totality of the circumstances did not show that the lineup procedures were unduly suggestive. Counsel is not ineffective merely for being unsuccessful. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

## D.  PHOTOGRAPHS OF DEFENDANT

Defendant argues that defense counsel was ineffective by failing to admit additional photographs of him that were taken on or around March 31, 2016. Our review is generally limited to the existing record, which would exclude the images defendant has provided for our consideration. See *People v Seals*, 285 Mich App 1, 20-21; 776 NW2d 314 (2009). Nevertheless, we note that there are no time stamps on the photographs, so it is not possible to determine when they were taken, seriously mitigating their potential probative value. In any event, defense counsel admitted several images of defendant at trial, including a license photograph that was taken 11 days after the robbery. Defense counsel also presented testimony from numerous witnesses who testified that defendant has always had a full beard. Defense counsel was not ineffective by failing to admit every possible photograph of defendant taken on or around March 31, 2016.

## E.  EXPERT WITNESSES

In his Standard 4 brief, defendant argues that counsel was ineffective for failing to retain an expert in eyewitness identification as well as an expert in DNA analysis.

Defendant appropriately articulates potential problems with eyewitness identification. However, he does not explain what testimony he expects an eyewitness expert to provide or how that testimony would have benefitted his case. He therefore fails to establish a factual predicate for this claim. See *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Furthermore, whether to retain an expert witness is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). In any event, defense counsel rigorously cross-examined the witnesses, including questioning them about their failure to mention defendant's beard to the police in their written police statements. We cannot discern any reason to conclude that counsel's decision to attack the eyewitnesses' identifications through cross-examination rather than expert testimony was an unsound strategy.

Defendant claims that an expert in DNA analysis would have testified that defendant could have contributed DNA to the ski mask well before March 31, 2016, and therefore was not present during the robbery. We do not think defendant's conclusion follows, because at most it would establish that defendant was not *necessarily* present during the robbery. In contrast, as noted, DNA analysis posed the risk of creating additional incriminating evidence. It was not unsound strategy to rely instead on Parker's testimony to introduce an alternative, and more definitive, innocent reason for defendant's DNA to be found at the scene. Furthermore, it is unlikely that defendant's proposed expert testimony would have affected the outcome of the trial in light of the three positive identifications and the minivan that was discovered in defendant's driveway and was registered to Patterson, defendant's girlfriend. Therefore, defendant fails to demonstrate that defense counsel's performance fell below an objective standard of reasonableness such that it deprived him of the effective assistance of counsel.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his convictions of assault with intent to do great bodily harm less than murder, first-degree home invasion, armed robbery, carrying a weapon with unlawful intent, and felony-firearm. Defendant specifically challenges whether the prosecution proved defendant's identity beyond a reasonable doubt as one of the robbers. We disagree.

"[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). When reviewing a challenge to the sufficiency of the evidence, we review the evidence in a light most favorable to the prosecution to determine "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). It is the role of the factfinder, rather than this Court, to determine the weight of the evidence and the credibility of witnesses. *People v Lee*, 243 Mich App 163, 167; 622 NW2d 71 (2000). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). This Court resolves any evidentiary conflicts in favor of the prosecution. *Id*.

Positive witness identification may be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Three witnesses identified defendant as one of the perpetrators from three separate photographic arrays and made in-court identifications. Moreover, "[t]he credibility of identification testimony is a question for the trier of fact that [this Court does] not resolve anew." *Id*. The trial court explicitly acknowledged that Trice, Willis, and Clark failed to mention that defendant had a beard on March 31, 2016, but ultimately gave more weight to three positive identifications. We defer to the trial court's credibility determination. *People v Kanaan*, 278 Mich App 594, 620-621; 751 NW2d 57 (2008).

Additionally, identity may be established by both direct and by circumstantial evidence. See *People v Bass*, 317 Mich App 241, 264; 893 NW2d 140 (2016). At times, circumstantial evidence can be stronger than direct evidence. *People v Wolfe*, 440 Mich 508, 526; 489 NW2d 748 (1992). The ski mask bearing defendant's DNA found only a few feet away from Tice's house is circumstantial evidence that defendant was one of the robbers. As discussed, defendant offered an alternative explanation, but the trial court found the testimony in support of that alternative not credible. The police also seized a black minivan from defendant's house, and the black minivan matched the description of the vehicle that Trice and Willis saw the two robbers drive. Thus, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for the trial court, as fact-finder, to conclude beyond a reasonable doubt that defendant had committed the crimes charged.

## IV. LABORATORY REPORTS

Defendant finally argues that the trial court plainly erred by admitting certain laboratory reports. Defendant argues that the reports are inadmissible as hearsay, and inadmissible because they were admitted without any accompanying statistical evidence. Defendant waived his argument that the trial court erred by admitting the laboratory reports because defense counsel stipulated to their admission and defendant does not challenge defense counsel's stipulation as ineffective assistance of counsel. See *People v Buie*, 491 Mich 294, 306-307; 817 NW2d 33 (2012) (recognizing that a waiver of certain rights, such as the right to confrontation, may be effected through the action of counsel). Accordingly, this Court need not address defendant's arguments.[2]

Affirmed.

/s/ Anica Letica
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra

---

[2] Defendant additionally suggests collusion by the witnesses, but we find no evidence in the record to support that hypothesis, nor does defendant offer any.